R. A. BEARD VS. BOARD OF SUPERVISORS OF LEE COUNTY.

1. PLEADING AND PRACTICE: *Mandamus. Code of* 1871, § 1520.

At common law, the return to the alternate writ in an action of *mandamus* was accepted as true, and the relator was left to his action for a false return. If he succeeded in establishing its falsity, the court, upon proper information of that fact, awarded the peremptory writ. The statute (§ 1520) provides that the proceedings in *mandamus* shall be, in all respects, "like those in an ordinary action for the recovery of damages." This statute abrogates the common law rule, and allows the return to be disputed. If the relator does not controvert the return, but moves for the peremptory writ, he admits the return to be true, and claims that in law, it presents no reason why the writ should not be made peremptory

2. SAME: SAME:

The writ, under the statute, is, in effect, a declaration, and must clearly set out the nature of the relator's right, the duty of respondent in respect thereto, and the relief he is entitled to. The return may either deny in whole or in part the recital of facts, or may disclose new matter in evidence.

3. SCHOOL FUND: *Duty of auditor.*

The statute (§ 2051) makes it the duty of the auditor or public accounts annually, on the first Monday in May, to apportion the school fund among the several counties of the state. He must notify the state superintendent of education, by the first day of June, of this apportionment, and he notifies the county superintendent, etc.

4. SAME: *Duty of board of supervisors.*

The act of 1873 makes it the duty of the county superintendent of education

to submit to the board of supervisors, by the first Monday in July, an estimate of the costs of running the schools in the county for the next scholastic year; and the board shall levy a tax sufficient for school house purposes, salaries, etc.  If the county superintendent fails to furnish the board with this information within the time allowed by the act, they cannot be charged with neglect of duty in failing to levy the tax.

5. SAME:  *Levy of taxes.*

The statute (§ 1372) provides that the board of supervisors shall meet, the first Monday in July of each year for the purpose of levying taxes.  If that meeting should, from any cause, fail, then the president or any two members may call a special meeting, etc. (§ 1373).  These statutes are restrictions on the board as to the levying of taxes, and the board have no power or authority to levy taxes, for any purposes, at any other meeting.  These provisions are not repealed or affected by the school law of 1873.

6. SAME:  *Limitation upon taxing power.*

Boards of supervisors were limited, by the act of 1872, to twenty-five mills on the dollar for all purposes.  In levying county taxes, they must confine themselves within this limitation.  They have no power or authority to exceed it for any purpose.  This act is not repealed or affected by the school law of 1873.  It is a good return to a writ of *mandamus* to compel the board to levy a tax, to answer that they have exhausted their taxing power.

ERROR to the Circuit Court of *Lee* County.

Hon. R. B. BOONE, Judge.

The facts in the case fully appear in the opinion of the court.

The following is assigned for error:

1. The circuit court erred in refusing the peremptory writ.

2. Because the return of the defendants was not sworn to.

3. Because the court erred in refusing to hear the testimony and to consider the sworn petition of relator and exhibits thereto, and certified orders of the board of supervisors.

4. The court erred in trying said cause on alternative writ and return thereto, taking said return as true.

*J. M. Echford*, for plaintiff in error:

*Mandamus* is the proper remedy.   40 Miss., 268;  28 id., 38;  9 S. & M., 77;  Walk. (Miss.), 523.   The judgment of the police

court allowing a claim is final and conclusive until reversed. 3 S. & M., 592; 19 Wend., 60; 12 Pet., 527; 12 Ohio, 58; 3 S. & M., 547. The claim cannot be impeached collaterally. Cited: Code of 1871, §§ 2014, 2024, 2029, 2030, 2053; Act of April 17, 1873, §§ 5, 7, 17, 19; Act of April 4, 1872; Constitution, sec. 5, art. 8; Code, 1871, § 1517; Acts of 1875, p. 217.

*J. L. Farley* and *G. E. Harris*, Attorney General, for defendant in error:

The office of a *mandamus* is to compel the respondent to perform an act that has been refused. The thing demanded must be a right on the part of the relator. It must be a duty to perform the act; but if there is a legal obstacle, which can be shown by the return, the writ will not be granted. Acts of 1872, p. 19. It was not error to refuse the writ. The motion for a peremptory writ admits the truth of the return, it being a part of the pleading, and no issue was presented. The judgment should be affirmed.

SIMRALL, J., delivered the opinion of the court.

This was an action of mandamus to compel the board of supervisors of Lee county to levy a tax on the taxable property of the county to pay sundry warrants held by the relator, and drawn upon the county treasurer " against the teachers' fund."

The board of supervisors made their return or answer to the alternative writ. Thereupon the relator moved that the peremptory writ be granted.

Section 1520, Code, in relation to the action of mandamus, intends that there may be issues which shall be in all respects like those " in an ordinary action for the recovery of damages."

At the common law, the return to the alternative writ was accepted as true in that proceeding, and the relator was left to his action for a false return. If he succeeded in that action and established its falsity, the court, upon proper information of it, granted the peremptory writ. 6 Bacon, A. C., 452. The statute quoted abrogates that rule of the common law, and allows the return to be disputed. If, however, the relator does not con-

trovert it, but makes a motion for the peremptory writ, he admits the matter of the return to be true, and claims that in law it presents no reason why the writ should not be made peremptory. Swan *v.* Gray, 44 Miss., 396. By his motion in this case, the relator submitted his right to the peremptory writ, as that right shall be determined on the face of the alternative writ and the return thereto. This writ is, in effect, a declaration, and most clearly sets out the nature of the relator's right, the duty of the respondents in respect thereto, and the relief that he is entitled to. The return may either deny in whole or in part the recital of facts, or may disclose new matter in evidence. The respondents in this case do not controvert the allegations of the writ, but aver sundry matters in avoidance. As remarked, the relator admits its truth by his motion, and the question is, whether upon all or any of the reasons stated in the return, a sufficient excuse is offered for a failure to accede to the demand of the relator.

By section 2051 of the Code, it is made the duty of the auditor of public accounts, annually, on the 1st Monday in May, to apportion the income of the common school fund among the several counties and districts of the state. The auditor must furnish the state superintendent of education, annually, on or before the 1st day of June, a report of the amount of the apportionment as contemplated in the last section, who shall notify the county superintendents, and thereupon the fund may be paid over to the respective counties. By the next section, it is made the duty of the board of supervisors * * to levy a tax * * sufficient to defray the estimated costs and expenses, provided that not more than six mills on the dollar shall be levied for school house purposes, or four mills for the teachers' fund ; and the teachers' fund shall consist of this tax, together with the poll tax, and the tax on the privilege to sell * * liquors. These shall be kept separate as the "school house fund" and "teachers' fund."

The 17th section of the act of 1873 modifies in some particulars the previous law, *First.* By making a state assessment of four

mills on the dollar exclusively for the payment of "teachers" in the public schools. *Second.* The auditor shall, by the first Monday of April, apportion the school fund to the several counties.

By the 4th section, the county superintendent shall, on or before the first Monday in July, submit to the board of supervisors, * * an estimate of the cost of building, purchasing, repairing, and renting school buildings, and of leasing or purchasing school sites * * and any deficit in the "teachers' fund." And the board of supervisors, on the recommendation of the county superintendent, shall make in the manner now provided by law, such allowances as to them may seem necessary and proper to carry into effect such recommendations. Sec. 4, p. 2 (acts 1873).

The 19th section defines what the board of supervisors may do: Upon the estimate of the county superintendent, it may levy a tax * * sufficient for "school house purposes," "the superintendent's salary," and any deficit in the "teachers' fund."

The return (among other things) states when the board of supervisors met in July, 1874, and made the levy of taxes for that fiscal year, the county superintendent of education had not filed his annual report, nor had the auditor of public accounts made the apportionment of the four mill school tax, as a teachers' fund. Hence the board had no data by which to estimate the deficit, etc.

We think that this is a good excuse. The 17th section of the act of 1873 requires the auditor to make the apportionment by the first Monday in April, and by the 4th section the county superintendent shall, on or before the first Monday of July, make his report, estimating the deficit, if any, in "teachers' fund." If the law is complied with, the necessary information is laid before the board at its July meeting, to enable it to impose the tax. Immediately upon the apportionment by the auditor, the money shall be paid over to the county. The report and estimates of the superintendent are necessary data to fix the rate of assessment. If, therefore, the board were not advised, in the mode prescribed, of a deficit, and its amount, they could not be chargeable with

the neglect of duty complained of.    It is quite clear that the legislature intended that any tax imposed to make up the deficit shall be imposed at the session of the board appointed by law for the levy of taxes for general purposes for the year.    That is appointed for the first Monday in July of each year.   Code, § 1372. If for any cause the board shall fail to meet on that day, "the president or any two members may call a meeting for the purpose of levying the county taxes at some convenient time as early as practicable."  § 1373.

The law does not mean that the board shall, in its discretion, make a levy of taxes for one purpose at one session, and for another at another session, but the injunction is plain that the especial business at the July session shall be to consider the subject of county finances—the demands upon the taxing power, so to adjust the rate of taxation within the limits fixed by law, as that all legitimate objects shall be provided for.    The act of 1873 contemplates no departure from this general rule, for the latest day allowed the county superintendent to make his estimate for school purposes is the first day of July, so that all that is necssary to be known by the board, in reference to the needs of the public schools, must be before it at the session in July, or if that fails, then at the called session provided for in section 1373.

The legislature has wisely fixed a limitation on the taxing power of the board for all purposes.    It must not exceed $25 on the $1,000, by the act of 1872.    Within that limitation, it must provide for all the purposes committed to its charge.    Of that rate, not more than four mills on the dollar shall be imposed for the teachers' fund, nor more than six mills for school house purposes. ·Code, § 2053.

That the rate may be judiciously fixed, the board must survey the entire subject, and determine what sum is needed for bridges, roads, court house, jail, schools and all other matters which require money, and must apportion the burden to meet these necessities.

Looking to all the legislation on the subject of the public

schools, the policy declared is that the four mill tax imposed by the state, and not exceeding the same rate levied by the county, with some smaller resources, shall be the fund to pay teachers, and that within the means thus provided the schools must be conducted. The counties within the limit of four mills taxation supply whatever deficit there may be from the state funds. The statute of 1873 designedly refers to the board of supervisors a supervision over these expenditures. The board must be consulted as to whether school houses shall be rented or whether sites shall be bought and the buildings erected, and then at what rate of cost; what is needed to pay teachers, and for how many months schools shall be taught. The board must consider these things as factors in determining what rate of taxation for school houses and for the teachers' fund and superintendent's salary shall be imposed for the year. The subject is fully opened up by the report and estimates of the superintendent, which disclose, or ought to disclose, what funds have been received from the state, and thereby enable the board to decide whether it will rent school houses or build new ones; whether it will keep the schools open four or six or more months, and how much of the four mills will be necessary to be imposed for the teachers' fund. It would be almost impossible to tax wisely and prudently if the board might, at any general or special session, levy special taxes, therefore the legislature has assigned one regular session, devoted especially to the consideration of county necessities, finances and taxes.

The third paragraph of the return is, that when the relator made his application to the board (which was in October), the board had exhausted its power of taxation as limited by the act of April 4. 1872 ; that is, with the state tax added, $25 on the $1,000 of assessed value. It would be difficult to frame a more persuasive argument than this in favor of the proposition just considered, that taxes for all purposes must be laid at the July term, otherwise it would be most difficult to provide for all the objects within the prescribed limit.

But it is said by counsel for the plaintiff in error, that the nine-

teenth section of the act of 1873 repeals the limitation imposed by the act of 1872, and the limitation of section 2053 of the Code, so that it does not matter what the amount of the debt incurred on account of school houses and teachers. Whatever the deficit may be, it must be met by a special tax, though in excess of the rate on the $1,000 of assessed valuation, and of the six and four mills on the dollar. If the former statutes are repealed, it is by implication. No express words of repeal are used. Unless there is repugnancy, all should stand. The legislature refers to the state funds apportioned among the counties as the primary fund, and treats the taxes to be imposed by the county authorities as in aid of and to supply the deficiency of the state fund. In that sense, the ninteenth section of the act of 1873 authorizes the imposition of taxes by the boards of supervisors, to cover the deficit. So does section 2053 of the Code. But the provision in the Code imposes a limit. That feature of section 2053 is not repugnant to nor inconsistent with the later statute.

The act of 1873 does not profess to be a revision of the public school law, but an amendment of it. The former statute remains in force, unless repealed by repugnance to the later statute.

The point was not made in the circuit court whether the evidences of indebtedness were of that high and conclusive character, which would be enforced by a resort to the taxing power. Warrants issued by the clerk of the board of supervisors in favor of a county creditor, whose claim has been examined and allowed and so entered upon their minutes, clothe the creditor with a debt certain in amount, and conclusive, *prima facie*, against the board, and sufficient to the basis of a *mandamus*.

But is a warrant on the county treasurer of the same or equal dignity and conclusiveness, when issued by the clerk of the school authorities, as a warrant issued under authority of the board of supervisors to the county creditor?

We have made these suggestions, not for the purpose of expressing a definite opinion upon the point, but lest we might be quoted, as having committed ourselves to the recognition of the

right of such a creditor as the relator, to employ as a remedy the *mandamus* suit.   See State Board of Education *v.* City of West. Point, 50 Miss., 638.

The judgment of the circuit court is affirmed.