## MARY A. GAMBLE ET AL. *v.* W. H. WITTY ET AL.

1. TAX SALES. *Abatement act of 1875 construed.*

Section 1 of an act approved March 1, 1875, provided "for the abatement of all taxes which have accrued prior to the taxes of 1874, upon all lands now claimed as forfeited to, or purchased by, the state ;" section 5 provided "that all lands heretofore held or claimed for taxes by the state are declared to be liable for the taxes of 1874 alone, and that the tax-collectors shall proceed to collect said

taxes for the fiscal year of 1874 ; " section 9 provided that, if the taxes are not-paid on said lands by April 1, 1875, the lands shall then become delinquent,. and shall be sold on the second Monday of May, 1875, for such taxes. *Held,* that this act does not authorize the sale of lands held by the state, on which the taxes for all years previous to 1874 had been paid, but only applies to lands delinquent for taxes prior to 1874.

2. SAME.  *Valid in 1875.*
Under the acts of April 17, 1873, and December 22, 1874, in relation to revenue,. a sale of lands on the first Monday of February, 1875, for the delinquent taxes of 1874, was legal.

3. TAX TITLE.  *How vested in the state.*
A list of lands sold to the state for, delinquent taxes of the year 1874, duly certified and filed with the circuit clerk of the proper county, vested title in the state, whether the same was recorded by the clerk or not.

4. SAME.  *Evidence.  Copy of list of lands.*
A certified copy of a list of lands sold to the state for taxes, and filed with the auditor of public accounts, is admissible in evidence in all cases where the original would be.

5. TAXES.  *Power of legislature to limit.*
Taxes levied by the Boards of Supervisors for building and repairing jails and bridges are protected by section 16 of article 12 of the state Constitution, and are not to be computed in making up the aggregate amount of the levy of taxes to which such boards are limited by the Legislature.

6. SAME.  *When to be levied.  Statute must be pursued.*
Section 1372 of the Code of 1871 requires the Boards of Supervisors to meet on the first Monday of July to levy the county taxes for the fiscal year; and section 1373 provides for a special meeting for that purpose, if any of said boards should fail to meet on the first Monday in July.  These boards must. conform to the statute as to the time of levying taxes, and if any such board, after having met at the regular term and levied certain taxes, should have a, special meeting and levy other taxes, the levy made at the special meeting: will be illegal and void, because levied at a time not authorized by law.

7. TAX SALE.  *Assessment partly illegal.  Section 8 of article 12 of the constitution construed.*
A sale of land for taxes a part of which are levied or assessed legally, and a, part illegally, is void.  And this rule is not changed by section 8 of article 12 of the state Constitution, which provides that "the courts shall apply the same liberal principles in favor of such [tax] titles as in sales by execution." This provision was intended to prevent the mere irregularities which do not avoid execution sales from being held to avoid sales for taxes, and not to cure illegality in the levy or assessment — these being the fundamental conditions on which the right to subject property to sale for the non-payment of taxes arises.

8. Same. *State tax legal, and county tax illegal.*
    Where land is sold for taxes, although the state tax may be legally levied and
    assessed, if any part of the tax for county purposes be illegally levied or
    assessed, and the sale be for the whole tax, it will be void, because of the
    illegal levy or assessment of a part of the tax.

Error to the Circuit Court of Montgomery County.

Hon. William Cothran, Judge.

The defendants in error instituted an action of unlawful detainer, to recover of the plaintiffs in error the possession of a certain tract of land. On the trial in the Circuit Court the plaintiffs below introduced in evidence a deed from the state, executed by the auditor on April 12, 1877, purporting to convey to them the title to the land in controversy. They also introduced in evidence a list of the lands sold to the state by the tax-collector of Montgomery County for the taxes of 1874, which the auditor of public accounts had certified to be a correct copy of the original list on file in his office. This evidence was objected to by the defendants, and the objection overruled.

The defendants proved that the Board of Supervisors, at the regular meeting in July, 1874, levied taxes for county purposes as follows : For general purposes, forty-five per cent on the state tax ; for pauper fund, twelve per cent on the state tax ; for bridge fund, eight per cent on the state tax ; for indebtedness to Carroll and Choctaw Counties, ten per cent on the state tax ; for deficit in teachers' fund, fifteen per cent on the state tax ; for school-house fund, eighteen per cent on the state tax—the whole aggregating 108 per cent on the state tax. It was also proven that the list of lands sold to the state for the taxes of 1874 was never recorded in the circuit clerk's office. The defendants further proved that the Board of Supervisors, at a special meeting in September, 1874, levied a tax of eighteen per cent on the state tax to build a jail for the county. The proof showed that the land sued for was sold to the state, on the first Monday of February, 1875, for all of the taxes levied at the regu-

lar meeting in July and the special meeting in September, for· the year 1874 ; and that the same was again sold on May 10, 1875, under an amendment to the Abatement Act, approved on March 1, 1875. The judgment was for the plaintiffs below,. and the defendants sued out a writ of error.

*Nugent & McWillie*, for the plaintiffs in error.

1. Did the sheriff have any authority to sell the lands in- volved in this suit on February 1, 1875? and, if he had the authority to sell, was that the day appointed by law? The act of· 1872 (Pamphlet Acts, 1) changed the mode of reaching lands delinquent for taxes, and required the sheriff to return lists of· all such lands to the office of the clerk of the Board of Supervisors, on the first Monday in December of each year. On receipt of this list, citations were issued, publication made, and. on the return-day, if no valid defense was made, the board condemned the lands to be sold. The act prescribes the·· mode in which delinquent lands thus condemned shall be sold, and, in default of bidders, struck off to the state. In 1875 (Acts, 86–88) the act of 1872 was amended, and the. 5th section of the amendatory law required the sheriff to make sale of all delinquent lands in the manner provided by law, and legalized all sales made in accordance with its, provisions. Did this act repeal the act of 1872, regulating proceedings against delinquent lands, or did it merely re- fer to the sale of the lands when condemned by the board in the manner provided by the act of 1872, and the amend-· atory act of 1873? The act of 1872 contained no pro-· vision as to cases where citation had·not been served, or the proper publication made. As to these the mode of disposition. was not pointed out; the act of 1873 came in to the rescue, and authorized proceedings anew, and the sale of lands con-· demned in the manner "provided by law." It was not in-·· tended to change the whole scheme inaugurated by the act of 1872, and this is made manifest by the act to harmonize the reve-·· nue law, passed March 11, 1874. Acts, 5.

The law was, however, again changed December 22, 1874,.

.and the law of the Code restored, except that the advertisement of sale was to be made immediately after January 1st of each year, and the sale was to be made on the first Monday of February, and the list of lands was to be returned to the circuit clerk. But this statute, by its terms, refers to lands "that may hereafter become delinquent for taxes," and not to lands which, under prior laws, had already for a month been delinquent, and were being proceeded against for condemnation. While the act of 1874, above referred to, repealed the section of the act of 1872 authorizing citation, etc., the amendatory .act of 1873 was not even referred to. As to all lands delinquent prior to December 22, 1874, and against which proceedings had been instituted by the board, there could be no sale, because the authority of the board to condemn was gone, and the lands were not embraced within the letter of the act of December 22, 1874. This is, doubtless, a *casus omissus*, but the conclusion reached seems to be logical, if the object be not to favor repeals by implication, and to harmonize all statutes upon one subject.

2. The sale of May 10, 1875, was wholly unauthorized. The tax receipt exhibited by plaintiff in error on the trial of this case showed that the taxes for the year 1873 had been paid, and the Abatement Act of 1875 did not apply. The 1st section of that act provides for the abatement of all taxes which have accrued prior to the taxes of the fiscal year 1874, upon all lands now claimed as forfeited to, or purchased by, the state ·of Mississippi, and was amendatory of the act of 1874, which abated taxes accrued prior to the fiscal year 1866, "upon all lands forfeited to, or purchased by, the state for the non-payment of taxes prior to the year 1866. Acts 1874, p. 49 ; Acts 1875, p. 11. The lands intended to be covered by these acts were those forfeited or purchased for non-payment of taxes prior to 1866. All such lands not disposed of under the act of 1874, ·and still claimed by the state as being held for taxes, were, by the act of 1874, relieved of the payment of all taxes back of :the year 1874, and the expression " now claimed as forfeited

to, or purchased by, the state of Mississippi for taxes " refers to the lands which, held for non-payment of taxes prior to 1866, were struck off again to the state under the operation of the first Abatement Act. At all events, no one could contend that the act was intended to apply to lands which had not, in fact, been forfeited to, or purchased by, the state, nor to lands upon which the taxes for the year 1874 were alone due and payable. The Abatement Act was intended to apply to cases in which taxes for years preceding 1874 were due, and could alone operate upon such cases.

3. The sale was void because the county taxes levied were largely in excess of what the law authorized. A casual inspection of the record will demonstrate this assertion. Besides, some of them were levied at a time not warranted by law. If the levy was excessive, the sale is void; and the fact that part of the taxes for which the land was sold was legal cannot impart vitality to the tax title. *McGehee* v. *Martin*, 53 Miss. 519; *Beard* v. *Lee County*, 50 Miss. 543; *Dogan* v. *Griffin*, 50 Miss. 782; *Tuttle* v. *Everett*, 51 Miss. 27; 53 Miss. 295; 4 Rand. 504; 8 Blackf. 335; 6 N. H. 182; 8 Vt. 419; 12 Conn. 437; *Board of Supervisors* v. *Klein*, 51 Miss. 816.

*J. B. H. Hemingway*, for the defendants in error, filed a lengthy brief, containing the following upon the decisive point in the case:

If it be true that the assessment of taxes for which the land was sold was partly illegal, that does not invalidate the sale. When the assessment-roll was approved by the Board of Supervisors, after due notice to those interested, and an opportunity offered them to have mistakes therein corrected, it became as a judgment, with all of the binding and conclusive character of a judgment of a court of law. *Virden* v. *Bowers, ante*, 1.

A defendant in a judgment cannot defeat the sale of his land under execution, on the ground that the judgment is for an amount a part of which he did not legally owe.

It is not denied by the plaintiffs in error that the state tax

for which the land was sold was legally levied and assessed, but it is claimed that the levy and assessment for county purposes was partly illegal. This question is presented : Can a county, by an illegal levy of taxes, deprive the state of her right to sell lands delinquent for a tax legally levied and assessed? Should the court answer this question in the affirmative, it would concede to the Boards of Supervisors the power to defeat the collection of the state taxes, and to annul the revenue laws altogether, so far as they are beneficial to the state. The whole scheme for the maintenance and perpetuation of the state government would be thus placed at the mercy of the Boards of Supervisors, and left dependent upon their wisdom or indiscretion, friendliness or hostility, intelligence or ignorance. If the answer is to be in the negative, then the sale in this case was certainly valid.

In *Virden* v. *Bowers*, *supra*, it is held that section 8 of article 12 of the state Constitution is imperative that the courts shall regard a title by tax deed with the same favor and indulgence as a title by sheriff's deed upon a sale under execution. And the principle is well settled that where there is a sale under several executions, only one of which is valid, such sale is good, and is not affected by the illegal executions. *Banks* v. *Evans*, 10 Smed. & M. 35 ; *Kane* v. *Mackin*, 9 Smed. & M. 387. This principle must be applied to tax sales where a part of the tax is illegal. The case of *Dogan* v. *Griffin*, 51 Miss. 782, in which it was decided that a sale of realty for taxes partly illegal was void, was in accordance with the rule which prevailed prior to the adoption of the present state Constitution. The sale in that case was in 1862. But section 8 of article 12 of the Constitution of 1869 changed the former rule, and required the courts to apply the same liberal rules of construction to tax sales that are applied in favor of sales under executions.

If it be held that the levy of taxes by the Board of Supervisors, in September, 1874, was at a time unauthorized by law, I insist that the levy is no part of the "assessment" which is

held, in *Virden* v. *Bowers*, to be a prerequisite to the power of sale for taxes. Though, if it was a part of the assessment of county taxes, it could not affect the validity of the sale for state taxes.

CAMPBELL, J., delivered the opinion of the court.

The state acquired no title to the land in controversy by the sale for taxes on May 10, 1875, because the act of March 1, 1875 (Sess. Acts, 11), did not authorize the sale of land on which the taxes had been paid for all the years prior to 1874. It embraced in its provisions only lands delinquent for taxes for the years prior to 1874. The land which is the subject of this dispute was not delinquent for any year before 1874, and was sold on the first Monday of February, 1875, for the taxes of 1874, and was not legally sold on May 10, 1875. Therefore the rulings of the court as to the sale of May 10th are erroneous.

Lands on which the taxes were not paid for the year 1874 were to be reported as delinquent on or before the second Monday of January, 1873 (sec. 2 of act approved April 17, 1873, Sess. Acts, 90), and were to be sold on the first Monday of February. Act approved December 22, 1874; Acts Extra Sess. 1874, p. 14. There is, therefore, nothing in the objection that the sale on the first Monday of February, 1875, for the taxes of 1874, was not at a time authorized by law.

The list of lands sold to the state, certified under his hand by the tax-collector, and filed by him with the circuit clerk of his county, did not fail of its legal effect by the failure of the clerk to record it in a book. It is the list, certified and returned to the clerk, which vests title, and not the recording of the list by the clerk. Code, sec. 1698.

The objection to the list of land sold to the state on the first Monday of February, 1875, as certified by the auditor, was properly overruled. Certified copies "of any public books, records, papers, or writings" in charge of any of the public officers in this state are receivable in evidence in all

cases, where the original or a sworn copy would be evidence. Code, sec. 814.

The levy of county taxes by the Board of Supervisors of Montgomery County for the year 1874 was not in excess of the limit allowed by law. By section 12 of an act approved April 4, 1872, the Boards of Supervisors were prohibited from levying a tax in any one year which, with the state tax added, should exceed $25 on the sum of $1,000 of assessed valuation, excepting from this restriction the power to tax protected by section 14 of article 12 of the Constitution of the state.

The levies made by the Board of Supervisors of Montgomery County, for 1874, aggregate 126 per cent on the state tax of 10 mills, and twenty-six per cent of this is under the protection of section 16 of article 12 of the Constitution, and not embraced in the restriction upon the power of the board to levy. *Board of Supervisors* v. *Klein*, 51 Miss. 807. Excluding this, and the aggregate of the county levies was 100 per cent on 10 mills, for the Board of Supervisors took as the basis of its levy, not the 14 mills levied by the state, including the teachers' fund, but the 10 mills, excluding the 4 mills for teachers' fund. The county levy for all purposes, besides bridges and the erection of a jail, was 10 mills, which added to the 14 mills levied by the state made 24 mills on the dollar, or $24 on the $1,000, of the assessed value of property. This was not a greater levy than the law allowed, and no objection to the sale made on February 1, 1875, exists on this ground.

The levy of a special tax by the Board of Supervisors at a special meeting in September, after it had levied the county taxes for the year at its July term, was illegal and void. The Code, section 1372, requires the Boards of Supervisors of the several counties to meet on the first Monday of July in each year for the purpose of fixing the amount of county taxes for the current fiscal year ; and section 1373 provides for calling a meeting for the purpose of levying the county taxes, at some convenient time as early as practicable, "if the board

shall fail to meet on the first Monday in July." The obvious. purpose is to secure uniformity as nearly as possible in the action of the Boards of Supervisors of the several counties in levying county taxes, and to conform this action to the plan. prescribed for the due arrangement and collection of taxes. *Beard* v. *Board of Supervisors*, 51 Miss. 542 ; *Board of Supervisors* v. *Klein*, 51 Miss. 807.

The Boards of Supervisors cannot levy taxes at pleasure, either as to the amount or the time of doing it, but must conform to law in all respects in performing this important duty. A disregard of the law renders their acts void.

The authorities agree that a sale for taxes part of which are legal, and part illegal, is void.

This rule is not changed by our Constitution, section 8 of article 12, which makes the principles applicable to sales by execution applicable to tax titles.

A valid assessment is necessary to a valid sale of land. Taxes must be legally due, to authorize a sale for them. They are not legally due if not levied by competent authority. If part of the taxes are levied by competent authority, and part are not, the collector might collect the legal and refuse to collect the illegal taxes. If he sells land for both, thus blending them in one sale, he cannot convey title, because the sale is entire, and the legal and illegal cannot be separated. Blackw. on Tax Titles, 160 ; Cooley on Tax. 296 ; Burroughs on Tax. 301 ; *Hardenburgh* et al. v. *Kidd* et al., 10 Cal. 402.

The illegal levy of taxes taints the sale made for both illegal and legal taxes. In no other way can the citizen be protected against usurpation of power, in the imposition of illegal burdens upon him in the shape of taxes. The Constitution was intended to prevent the mere irregularities, which are held not to avoid execution sales, from being held to avoid sales for taxes. It was not intended to cure illegality in the levy of taxes, and it does not dispense with a valid assessment and levy of taxes as the fundamental condition on which a right arises to subject property to sale for the non-payment of taxes.

The constitutional provision cited cannot be successfully invoked to sanctify illegality, and cure a departure from the requirements of law in the important matter of imposing taxes. The public charge must be lawfully fixed upon the person or thing, and, if it shall not be discharged, a right arises to sell property to pay it ; and, in doing this, such irregularities as it is settled will not avoid a sale under execution shall not be held to avoid a sale for taxes.

Although, in the case under consideration, the state taxes were legal, and the levy for county taxes by the Board of Supervisors of Montgomery County at its July meeting was in accordance with law, and the collector might lawfully have sold land for these taxes, he did not sell for these alone, but sold for an entire sum made up of these and the taxes illegally levied at the special meeting in September. " The entire sum is the consideration of the deed, and this being void in part is void in whole." It is not like the case of two executions upon two separate judgments, one valid and the other void, in which case the purchaser would acquire title to the thing sold by virtue of that which was valid.. In that the valid judgment and execution is distinct from the invalid one, and, being separate and distinct, is not affected by its infirmity, and, being wholly unaffected by any illegality, is sufficient to uphold title made under it.

The state and county taxes, although one is levied by the state and the other by the Boards of Supervisors, are collected at the same time, by the same officer, and in the same way, upon the same assessment-roll, and the two are so blended that it is not allowable to distinguish them as separate judgments and executions.

The assessment-roll, with the levy for the state by act of the Legislature, and the order of the Board of Supervisors fixing a certain rate *per centum* on the amount of the assessment-roll for state taxes to be collected for county taxes, constitute the authority of the tax-collector to demand taxes. While these are separable, if they are not separated, but blended in the

act of the collector in selling property for the entire sum of legal and illegal taxes, his act is rendered illegal, because of want of authority to do all that he has done.   The state and county taxes are to be collected by one act of sale.   They are for this purpose united by law.   The sale is made a single act, for all taxes.   In case of two judgments and executions, the levy of both on the same thing, and its sale at the same time, is the act of the officer, and not in pursuance of the requirement of law.   He may levy one on one thing and the other on something else, and he may sell at the same or at different times.   The two are by law distinct and separate.   One is independent of the other.   But in sales for taxes, as stated above, there is by law such a connection as to make the rules applicable to different executions inapplicable to sales for taxes.   The law requiring but one act in the sale for state and county taxes has so indissolubly associated them as to avoid the act because of the partial illegality of it.   Blackw. on Tax Titles, 437 *et seq.*

It follows that the sale of this land for taxes, on February 1, 1875, was illegal, and conferred no title on the state, and that the defendants in error did not acquire any title by their purchase from the state.   Judgment reversed and cause remanded.