JOHN T. HOWARD *v.* JAMES S. WALTERS.

Tax Sale — Revenue Act of 1872 Construed — Acts, page 1.

The revenue act of 1872 (Acts 1872, p. 1) established a different proceeding for the condemnation and sale of land for taxes from the Code of 1871, section 1700 of said Code declaring that the tax-collector's deed to individuals shall be *prima facie* evidence that the assessment and sale and all proceedings of sale were valid, is not applicable to sales made under said act. Weir *v.* Kitchems, 52 Miss. 74, and Vaughan *v.* Swaysie, 56 Miss. 704, adhered to.[1]

Same — Sale Under the Act of 1872 — Delinquent List.

Under the provisions of said act the tax collector had no authority to sell land for taxes; by reason of the legal assessment and levy of taxes it was necessary that the delinquent list provided for should be returned to the board of supervisors and that condemnation should be made after notice to the owner, and this could only be done at the time and in the manner prescribed by statute.

Same — Condemnation of the Land by the Board — Delinquent List.

The board of supervisors could take no steps toward condemning land until the delinquent list was returned, which was a prerequisite jurisdictional fact, and all proceedings by the board before its return are *coram non judice* and void.

Ejectment by appellant against appellee to recover certain lands described in his declaration. From a verdict and judgment for the defendant, plaintiff appeals.

Plaintiff, to maintain his title, introduced a deed from the sheriff of Monroe county, where the land was located, executed

---

[1]
"Conveyances made by a tax-collector shall be in the form or to the effect following, to wit:  *  *  *  which conveyance shall vest in the purchaser a perfect title to the land sold for taxes, subject to the right of redemption; and no such conveyance shall be invalidated in any court of this State except by the proof that the taxes for which said land was sold had been paid before sale, and the tax-collector's conveyance to individuals, and list of lands sold to the State, shall be *prima facie* evidence that the assessment and sale and all proceedings of sale, were valid." Code of 1871, § 1700.

"SECTION 1. Be it enacted by the Legislature of the State of Mississippi, that the tax-collectors of the several counties in this State shall, on the first Monday of December in each year, return into the office of the clerk of the board of supervisors of their respective counties a list of the lands in their

in May, 1873, to J. W. Maynard, reciting that in accordance with the Act of 1872 he sold the lands, which were assessed to W. E. Pullen, the reputed owner, and a deed from Maynard to plaintiff, dated February 19, 1881, a copy of the assessment roll for the year 1872, showing that the land was assessed to Pullen, and the following orders of the board of supervisors of said county:

First.    Order adopted February 4, 1873:

"Ordered, upon the presentation by the tax-collector of the

several counties delinquent for any tax which such collectors are or may be required to collect, and the person or persons to whom each tract or lot may be assessed, showing whether such person or persons are residents or non-residents of the county, and if non-residents, the place of their residence, according to the best of his knowledge, information or belief, and the total amount of the several taxes assessed against each tract, which list shall be verified by affidavit; and if any tax-collector shall fail, through negligence or incompetency of himself or of any deputy, to return such list at the time and manner here required, or shall make any false return in respect to such delinquent lands, he shall be deemed guilty of felony, and on conviction, removed from office and imprisoned in the State penitentiary for a term of not less than one year; and he and the sureties on his bond shall be liable thereon for the whole amount of such delinquent taxes, and for all damages which the State or county or any private person may sustain thereby.

SEC. 2.    Be it further enacted, That it shall be the duty of the boards of supervisors of the several counties, on the third Monday of December in each year, to hold a special meeting for receiving the delinquent land list aforesaid; and if said list shall not be ready on that day, as required by this act, said board may, on clear proof that such failure has resulted from some entirely unavoidable cause, extend the time for the production thereof, not exceeding five days, at the expiration of which said board shall again meet; and if said list shall not then be returned, no excuse or further time shall be allowed.    *    *    *

SEC. 3.    Be it further enacted, That on receiving said delinquent land list, it shall be the duty of the board of supervisors to cause citation to be issued and served against each of the persons to whom said lands shall have been assessed, notifying them respectively that the land to them assessed is delinquent as aforesaid, describing said lands as the same shall appear on the assessment books, and stating the several amounts and sum total assessed against them respectively, and commanding them to appear before said board at a meeting thereafter to be held, on a day to be designated by said board, not longer than sixty nor less than thirty days thereafter, and either pay the taxes aforesaid, and all costs, together with 10 per centum damages, or show that said taxes have been paid, and that in default of such showing, judgment for the sale thereof will be entered at said meeting of said board, against said lands, condemning the same, or so much thereof according to law, as shall be sufficient to satisfy said taxes, cost and damages." Laws of 1882, chapter 1, p. 1, sections 1, 2 and 3.

delinquent land list for 1872, that the clerk of this court proceed to cause citation to be served upon each of said delinquents residing in this county or State whose residence can be ascertained, and in all cases where the lands are assessed to non-residents or unknown he shall at once cause citation by publication to be made as provided in section 5 of an act to amend the revenue laws, etc., approved April 5, 1872. * * * Directing them to appear before the board at a meeting to be held on Monday, March 17, 1873, at the courthouse in Aberdeen, Mississippi, and either pay said taxes and costs or show that the taxes have been paid. In default of such showing, judgment will be entered at said meeting condemning so much thereof as shall be sufficient to satisfy said taxes."

An order of the board rendered on March 17, 1873, showing that publication had been made in this case, the owner being a non-resident, and the judgment of the board condemning said land for sale for the taxes on the 10th of May, 1873. This order recited that the sheriff and tax-collector had that day reported the list of lands delinquent for taxes on the assessment of 1872 assessed to non-residents and unknown parties. This was all the evidence. The court gave a peremptory instruction to find for the defendant. From a verdict and judgment in accordance therewith plaintiff appeals.

APPEALED from Circuit Court, Monroe county, J. A. GREEN, Judge.

Affirmed, January 16, 1882.

*Attorneys for appellant, Reuben Davis, and G. J. Buchanan.*

*Attorneys for appellee, Houston & Reynolds.*

Brief of Davis & Buchanan:

The court below justified its action by the authority of the case of Ware *et al. v.* Kitchens, 52 Miss. 74. This case, in my judgment, does not warrant the action of the court, because this court in that case evidently held that the title shown by the plaintiff was *prima facie* good and sufficient to impose upon the defendant the burden of proof to show the contrary. And again it is be-

lieved that the decision itself is bad law, and I think that a careful and sober examination of the statute will sustain me in both positions asserted.

The eighth section of the act provides as follows, to wit: "That to each purchaser, the officer who shall have sold the same shall make, execute, acknowledge, and deliver, in brief and explicit form, a deed or deeds for each separate lot or parcel sold, and the same shall vest in such purchaser, his heirs, and assigns, an absolute and indefeasible title forever." Provision in favor of minors, idiots, etc.

This title, being absolute and indefeasible forever, should certainly be self-sustaining; and if it could be assailed at all, which is denied, the attack should come from the defendant, who claims to be the original owner of the land; and this attack should derive its support, not from presumptions, but from positive and express proof that the tax lien had been extinguished by payment of the tax before the day of sale. Because, if the tax was not paid, the fact was known to the owner, and his refusal to pay was an act of stubborn default of duty.

The language is "absolute and indefeasible," two of the strongest and unforging words in the English language. By the selection of these words, then, it would seem that the Legislature intended that this class of titles should be good against any presumption or proof to the contrary. The Legislature meant all that it said, and could not say anything stronger than it did in this instance. The title is as absolute as God. The title shall not be made void. The law charges the land owner with the knowledge of its existence, and gave, by these words, certain assurances, guarantees to purchasers that such a title cannot be impeached. And if this court shall take the liberty of softening the force of these words a little, it should not allow the owner of the land to escape by doing less than that he had paid the taxes thereon for the year 1872. A mere neglect on his part, or informalities on the part of the officials, could not avail him. This court has repeatedly held that the .tax due was *per se* a lien on the land, which could be enforced by sale for the collection of such tax. I must, then, repeat that the proof to defeat this title should have been equal in dignity to a showing that there was at the time of such sale no tax due.

The Act of April 5, 1872, was an amendment of the Code of

1871 only so far as to change the mode of the sale of delinquent lands. And the principal object of the change was to put the title acquired at these sales beyond impeachment for any reason whatever. It was to make a suit in the supervisor's court against a delinquent tax-payer equal to a suit at law, so that he could contest with the sheriff the fairness of his right to report the land delinquent by showing that he had paid the taxes; and upon a failure to do so, to have a judgment for the sale thereof as valid as a decree of the Chancery Court and sufficient to guarantee the title to the purchaser. Whether or not the delinquent list was returned was not a question with which the land owner had any concern. It was not to inform him that he had not paid his taxes, for he knew that already; but it was to enable the sheriff to ask for a credit upon the assessment rolls and to satisfy the board of supervisors of the fairness and of the amount of the credit.

The first section of the act referred to does not provide for or require that the land owners shall examine the list to see whether they have paid their taxes or not; and therefore the third section requires the board of supervisors to issue notice to the delinquent tax-payer to show cause why his land should not be condemned to be sold for the taxes due on it.

The sixth and seventh sections provide the showing to be made—that the return is false or that the taxes have been paid since the return was made. If I am right in this, then it does appear that the return of the delinquent list is alone for the benefit of the board of supervisors; and the provision that the return of the delinquent list shall be made into the office of the clerk of the board of supervisors within five days is but directory.

This view of the subject is further sustained by the fact that the first section of the act imposes penalties upon the sheriff failing to make the return, without relieving the delinquent tax-payer from any of the consequences or results of the forfeiture. The second section requires the board of supervisors to meet on the third Monday of December of each year to receive the delinquent land lists; and it further provides that if the lists shall not be ready on that day, as the first section requires, the board may, upon clear proof that the failure was the result of inevitable cause, extend the time for "five days for producing the same." Thus it will be seen that the requirement of the first section that the delinquent list shall on the first Monday in December of each

year be returned into the office of the clerk of the board of supervisors is not absolute, because the second section allows it to be returned on the third Monday of December, and five days thereafter with their consent. And if, after the expiration of the five days, the return still is not made, the statute again imposes further penalties upon the sheriff without extending to the delinquent tax-payer any relief.

Failure to return the delinquent list at the expiration of five days does not, in my judgment, exhaust the right of the State to collect her revenue out of this delinquent land, through the instrumentality of the board of supervisors, as provided by law. If it does, the law would have enabled a corrupt sheriff to defeat the State's rights to revenue on the lands of her people and left her a mendicant and beggar.

In my judgment, the law itself contemplates further time. The third section provides that upon receiving such delinquent land list it shall be the duty of the board of supervisors to cause citation, etc. Receive it when? This section does not indicate. Nothing in sections 1 or 2 prohibits the board from receiving the return after five days from the third Monday of December. The expiration of five days imposes new penalties upon the sheriffs, not prohibition upon the board to receive. The Legislature could not have intended to impose a penalty upon the State by creating a forfeiture of its right to the tax due; nor could it have intended to reward the tax-payer because he was derelict in his duty to his country; and yet if the construction given by this court in the case of Ware be correct, all these consequences would attach. I will now examine that case by this standard of construction.

On page 75, 52 Miss., the court said: "The defendant showed various irregularities which had crept into the proceedings preceding and leading to the sale, the most serious of which was the failure of the tax-collector to return the list of delinquent lands into the office of the clerk of the board of supervisors." I have endeavored to show, and I think I have shown, that the delinquent list has no connection whatever with the proceedings against the delinquent tax-payer, but that it served only to warrant the board of supervisors to institute proceedings against the delinquent tax-payer and delinquent land.

This extract, however, does sustain the position that if the tax deed is only *prima facie* good, still the burden of proof is on the

defendant and must be limited to the showing that the return was false, or that the tax had been paid since the return. In another part of the proceedings of this court, in the case of Ware, the court use this curious expression: "It is thus seen that the defendant had no opportunity during the proceedings for forfeiture to avail himself of this very grave defect in the institution of the said proceedings." What grave defect? And what proceedings for forfeiture? As I understand the statute, the forfeiture was complete before the delinquent list could be returned. The delinquent list was the result of the forfeiture, and the forfeiture was the result of the non-payment of the taxes; and to say that the defendant had no opportunity to avoid the forfeiture is to say that the defendant had no knowledge of an absolute duty.

The proceeding by the board of supervisors by citation was to enable the delinquent tax-payer to show that there had been no forfeiture, or, if there had been, that he had paid the taxes subsequent to the return. To say, as the court did, that there was no opportunity allowed him to do so (that is, to show that the tax-collector had not returned the delinquent list), a thing with which I have shown he had no concern, is to enlarge his powers at the hearing after citation. The statute does not allow him to make that showing before the board—only allows him to show that the return is false or that he has paid the taxes, either before the return or subsequently.

The proceeding authorized by the statute before the board of supervisors was only to enforce the right to the revenue resulting from the forfeiture. And the delinquent tax-payer certainly had the opportunity to show to the supervisor's court that he had paid the taxes if he had appeared and made defense. His failure to do so warranted the board of supervisors to make the decree which became final.

Now let us examine the various provisions of the statute and see if the views above expressed are not warranted. The first section provides, "and if any tax-collector shall fail to return such list at the time and manner here required, or shall make any false return in respect to said delinquent land," etc.; then section 6 provides that "upon proof of publication to the board, if it shall appear that such lands in any case were falsely returned as delinquent, the board shall release the same."

This extract shows that the court was mistaken when it said

that the delinquent tax-payer could only be allowed to pay or show that he had paid. This sixth section certainly allows him to show that the return is false. Yet, notwithstanding this provision, the court say in another part of this decision that the land owner could only show, in a suit at law founded upon a tax deed, that the delinquent list was not reported within five days after the third Monday in December, as such a showing was not allowable before the board of supervisors. In the face of this declaration, the statute expressly declares that the delinquent tax-payer may show that the report is false.

The seventh section then provides that "in all cases wherein it shall not appear that the said delinquent list is false, or that the taxes have been paid since the report of the delinquent list, a judgment shall be entered condemning the land to sale." Then it does seem that the court, in the case of Ware, but casually examined the statute, and that the delinquent tax-payer had the right to make defense in the supervisor's court, and that he is barred to attack collaterally the judgment of that court in any other court. If so, then the record shows that the appellant made out his case in the court below by reading the sheriff's deed, and that the court erred in the charge he gave the jury for the defense.

This court, in the case of Ware, treated the return of the sheriff of the delinquent land list as an official act, in which the tax-payer had an interest, and regarded it as a part of the pleadings in the subsequent proceedings to make the land liable as delinquent; this view, now upon consideration, the court must abandon. The delinquent tax-payer has not the slightest interest in the question of the return; that is intended as a check upon the tax-collector, and affords the State evidence of the fidelity of the tax-collector. Without it the tax-collector could commit the most enormous frauds upon the revenue. He asks credits for money not collected, to get which he must show a delinquent list, which list enables the State to force collections from the delinquent tax-payer. In this proceeding the tax-collector is only an informer, and the suit instituted against the delinquent tax-payer is predicated upon this information, and it is immaterial, so far as the delinquent tax-payer is concerned, when that information is given, since the issue between himself and the State is as to whether he is due taxes or not; and that question is not affected by the delin-

quent list, but by the proof.   The proceeding before the board of supervisors, as I have said, is in the nature of a regular suit at law for money due the State, and is a suit, and the issue is whether anything, and how much, is due; to which issue the testimony is confined.

Again, the decision of the board of supervisors is a judgment or decree, and is entitled to all the force and effect of a judgment or decree in the Circuit or Chancery Court.   I will not discuss the force and effect of a judgment, as I must know the court is familiar therewith.

Brief of Houston & Reynolds:

The validity of the tax title under which appellant claims, is the only question involved.   The tax sale was made under the Act of 1872.   This act makes no provision as to the effect which is to be given to the tax-collector's conveyance.   It does not make the deed of the officer *prima facie* evidence that all or any of the conditions which are to precede the sale had been performed. Weir *v.* Kitchens, 52 Miss. 74.

We are then to test the validity of the tax sale under the provisions of the Constitution of the State, which declare that "The courts shall apply the same liberal principles in favor of such (tax titles) titles as in sale by execution."   Const., art. 12, sec. 8, p. 36 of Code.

The tax sale is void.   The minutes of the board of supervisors show that the tax list was not returned by the sheriff until the 17th of March, 1873.   The language of the order of the board is: "This day (March 17, 1873) S. C. Anderson reported the list of lands delinquent for taxes on the assessment of 1872."   It is ordered on the 4th of February, 1873, that *upon* the presentation by the tax-collector of the *delinquent land list* for 1872 that the clerk proceed to cause citations to be served upon the delinquents.   This shows that the delinquent land list was not presented until after the 4th of February, 1872, and was not, in fact, presented until March 17, 1873.   The failure to present the delinquent list by the time presented in sections 1 and 2 of the Act of 1872 makes the sale void.   Weir *v.* Kitchens, 52 Miss. 74.

To show title under a sale by execution, you must prove the judgment, and if it be a court of special jurisdiction, you must show jurisdiction of the person.   The lands were assessed to W.

L. Pullen, and in the deed it is recited that he is the reputed owner; whether he is a resident or non-resident is not shown. The order of the supervisors condemning the land to be sold, condemns alone the lands of unknown and non-resident owners. If Pullen be a resident, there is no order, no judgment condemning his land to be sold for the non-payment of taxes.

But if it be contended that the court will presume that Pullen, the defaulting tax-payer, was a non-resident, or that the order was intended to condemn the lands of residents and non-resident owners, this will not avail appellant. The order of condemnation is void for uncertainty. The parcels of land, the reported ownership, nor the amount of taxes are not stated, and this makes the order a nullity. Woods *v.* Freeman, 1 Walk. 398; Lane *v.* Bommelman, 21 Ill. 143; Lawrence *v.* Fast, 20 Ill. 338.

The jurisdiction of the person must be shown, and we may concede that which is sometimes mooted, that you may show this by recitals in the record. There is an order for citation, but in the order of sale there is no recital that the citation has been executed. If Pullen, therefore, is the owner and a resident, there is nothing which shows that the court acquired jurisdiction over him. In the absence of such a recital in the record, it devolved upon appellant to show actual service of the citation by the return thereon. Williamson *v.* Berry, 8 How. 540; Thatcher *v.* Powell, 6 Wheat. 14; 2 American Lead. Cases, 733.

The deed of the tax-collector does not recite that publication had been made according to law. In the absence of such a recital, it devolved upon appellant to show an advertisement of the lands in the legal manner.

OPINION.—COOPER, J.:

In Weir *v.* Kitchens, 52 Miss. 74, it was decided that the revenue act of 1872 (Acts of 1872, p. 1), established a radically different procedure for the condemnation and sale of lands delinquent for taxes, from that contended in the Code of 1871, and that the provisions of the Code, section 1700, declaring that "the tax-collector's conveyance to individuals, and list of lands sold to the State, shall be *prima facie* evidence that the assessment and sale and all proceedings of sale were valid," was not applicable to sales made under the provisions of the later act. This decision

has been subsequently followed in the case of Vaughan v. Swaysie, 56 Miss. 704.

We are now earnestly urged to review these decisions and to overrule them. It is said that the return of the delinquent list by the collector to the board of supervisors was required by the Act of 1872 for the protection and benefit of the State alone, to the end that the collector might be charged with all reported delinquencies not properly existing, and that the tax-payer was not at all interested in the performance of this duty by the officer, because the assessment of the property, the levy of the tax, and the failure of the owner to pay the same, subjected the property to sale.

It has been decided in several cases that such was the effect of the revenue act contained in the Code of 1871, and that where the assessment and the levy of the tax was legal, upon default in payment, the collector was armed with power of sale as under execution, and that sales, though irregularly made, under such circumstances would be upheld. Virden v. Bowers, 55 Miss. 1; Gamble v. Witty, 55 Miss. 26.

But where there was no legal assessment or no legal levy of taxes, though the tax-payer failed to pay the amount claimed, no legal sale could be made. Gamble v. Witty, 55 Miss. 26; Johnson v. Futch, 57 Miss. 73; Smith v. Nelson, 57 Miss. 138.

These decisions proceed upon the theory that the assessment and its return gave jurisdiction to the board of supervisors of the person of the owner and the property assessed; that the levy of the tax was the judgment of the court, and the award of execution, in default of payment, and that the assessment roll in the hands of the officer was in the nature of an execution under which he was authorized to make sale of the delinquent land. But a different rule was established by the Act of 1872. Under its provisions the collector had no authority to sell the lands by reason of the legal assessment and levy of taxes. In addition to this, it was necessary that the delinquent list should be returned to the board of supervisors, and that a condemnation of the land should be made, after notice to the owner. A judgment of condemnation was necessary, and that could only be rendered at the time and in the manner prescribed by the statute. Without the return of the delinquent list, it had no jurisdiction over the thing, and until service of notice by process or publication, it had no juris-

diction of the owner. The board could not take any steps towards condemning the land, until after the return of the list. That was a prerequisite jurisdictional fact, and in its absence all the proceedings of the board were *coram non judice*.

The evidence introduced by the plaintiff shows that the order for publication and notice was made by the board anterior to the return of the list; that the list was not in fact returned until the day fixed for hearing objections to the rendition of judgments of condemnation; that this day was long subsequent to the limit which could have been allowed by the board for the return of the list; that no notice was therefore given to the persons to whom the lands were assessed, but judgment was rendered condemning the lands to sale on the same day upon which the list was returned, all of which proceedings were unauthorized by the statute, conferred no power on the collector to sell, and warranted the instruction given by the court below.

*The judgment is affirmed.*