# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

## PORTIA GAGE

### *v.*

## WILLIAM M. BAILEY *et al.*

102    11
135   133

102    11
138   308
138   320

102    11
141   225

102    11
48a  580

102        11
200   ³240

102        11
204   ¹476

102        11
f212   ⁵527

d213   ⁵201

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. FORMER ADJUDICATION—*judgment against land for taxes.* A judgment in the county court for taxes is not conclusive upon the owner, of the liability of the land for the taxes assessed on it, where he does not appear and contest the application for judgment, but he may still question the legality of the tax in another proceeding, as, on bill to set aside the tax deed as a cloud upon his title. But if he appears and contests the application, he will be concluded by the judgment, the same as in any other case.

2. PLEADING AND EVIDENCE—*evidence must have its foundation in pleadings.* On a bill to set aside a tax sale and deed, on the ground of illegality in the proceedings, no objection can be considered which is not alleged in the bill.

3. TAXES—*certificate of town taxes.* Under sec. 7, art. 10, chap. 103, Gross' Statutes of 1868, any certificate by the town clerk, no matter in what form of words, which gives the board of supervisors to understand definitely what amount of taxes is required to be levied for town expenses, is sufficient. Such information may be given by stating the rate per cent on the taxable property of the town, as well as by giving the aggregate amount of town tax to be levied.

4. SAME—*board of supervisors not required to levy town tax, or keep a record thereof.* The board of supervisors are not required to levy the

taxes required to defray town expenses, but only to cause the same to be levied, and where the proper rate has been levied and extended, it will be presumed it was done by the proper authority, although the record may fail to show that the board ordered the same to be levied. The board is not required to make a record of its action in such matters.

5. SAME—*illegality of tax must be clearly shown, to avoid sale.* As three per cent is authorized by statute to be levied by school directors for "building purposes," a sale of lots, on a judgment for school taxes of that rate, will not be held illegal, on bill in chancery to set aside a tax deed, without any allegation or proof as to the school district in which the lots are situated, or the rate required to be levied in each of the districts in the township.

6. TAX SALE—*evidence as to sale en masse.* The fact that several lots are included in one certificate of purchase affords no evidence that they were not sold "separately and in consecutive order," as required by law. It seems that the sale and redemption book used by the collector in making tax sales affords the only evidence as to the manner in which lots have been sold.

7. SAME—*sufficiency of notice before deed.* The service of notice of a tax purchase of land on the only party in the possession of the premises, more than three months before the expiration of the time of redemption, where the property has not been assessed in the name of any person, is sufficient to entitle the purchaser or his assignee to a deed. It is not necessary that the service of the notice should be had on the premises, but may as well be made elsewhere.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill in equity, filed by William M. Bailey, Geo. B. Ruggles, and Amasa M. Eaton, trustees, under the will of Sarah B. Eaton, deceased, to set aside a sale and conveyance of certain lots for the taxes of 1872.

The following is a copy of the affidavit of the service of notice of the purchase, and of the expiration of the time to redeem:

"STATE OF ILLINOIS, ⎫ *ss.*
    *Cook County.* ⎬

"Edward L. Couch being duly sworn, says that he resides in said county, and is the agent of Asahel Gage; that as such agent, deponent, on the 3d day of September, 1874, served a

notice, of which the annexed notice is a true copy, on P. N. Duval, by handing the same and leaving the same with him, said P. N. Duval, in said county. Deponent is acquainted with the premises mentioned in said notice, and the person so served was the only person in possession thereof three months before the time of redemption from the sale mentioned in said notice expired, to-wit, on the 3d day of September, 1874, and for more than thirty days previous and subsequent thereto, and said premises were not taxed in the name of any person.                     EDWARD L. COUCH.

"Subscribed and sworn to this 3d day of January, A. D. 1876, before me.                     AUGUSTUS N. GAGE,
                                        Notary Public."

Mr. AUGUSTUS N. GAGE, and Mr. HENRY D. BEAM, for the appellant.

Mr. J. P. ALTGELD, and Messrs. PECKHAM & BROWN, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

A freehold is involved in this litigation, and hence the case is brought directly from the circuit court to this court on appeal. Both parties claim title to the land described in the bill, complainants having the patent title, and defendant having a tax deed, which she insists is now the paramount title. It appears the property was assessed for the year 1872, for State, county, town and school taxes, and West Park boulevard assessments. The taxes not having been paid, this property, with other lands and lots, was returned delinquent. On application by the proper officer, judgment was rendered in the county court of the county where the property is situated, for such unpaid taxes, and on the precept issued, the property was sold to Henry H. Gage for the taxes and costs due thereon, to whom the usual certificate of pur-

chase was issued. Afterwards the purchaser assigned his certificates, by writing thereon, to Asahel Gage, who claims to have given the notices required by law, and the lots not having been redeemed from the sale, he received a tax deed therefor in the usual form. The title he thus acquired he conveyed to defendant, Portia Gage, and it is under that title she defends.

. This bill was filed by the trustees under the will of Sarah B. Eaton, deceased, against Portia Gage, to have the tax deed under which she claims title to the property declared void, on account of certain irregularities set forth specifically in the bill, and to have it removed as a cloud upon the title they represent. An amendment to the original bill sets forth with more definiteness the irregularities in levying and assessing taxes, relied on as being fatal to the tax deed, as well as irregularities said to have occurred at the sale and since the judgment in the county court, and makes a tender of the moneys paid on the premises at such tax sale, and subsequently, with interest, as the court on the hearing shall find to be just. An answer to the bill was filed by defendant, in which she insists on the validity of the tax deed to her grantor, under which she deraigns title, denying all allegations of non-compliance with the provisions of the statute in levying and assessing taxes, and avers strict compliance with the law in all proceedings necessary to vest the title to the property in the assignee of the purchaser at the tax sale, to which a replication was filed, and on the evidence submitted the court decreed substantially according to the prayer of the bill. The cause comes to this court on defendant's appeal.

This court has decided in *The Belleville Nail Co.* v. *The People,* 98 Ill. 399, that a judgment in the county court for taxes is not conclusive upon the owner, of the liability of the land for the taxes assessed on it. It is otherwise where the owner appears and contests the application for judgment. In such case he will be concluded by the judgment of the

court, as in any other case in which the matters in conten-
tion have been once litigated. The owner, in this case, did
not appear to contest the application for judgment for the
tax assessed against the lands in controversy, and hence the
objections taken to the regularity of the proceedings, both
before and after the judgment, are open for consideration.

A number of alleged departures from the requirements of
the statute in levying and assessing certain taxes are set
forth in the bill, but it will only be necessary to remark upon
such as are insisted in argument as being fatal to the validity
of the tax-deed. As respects the town tax included in the
judgment, for which, with other taxes therein included, the
lots were sold, and which is the basis of the deed, it is said
they were illegal and void for two reasons assigned:

*First*—The certificate of the town clerk of the amount
required to be raised to defray town indebtedness, is not in
conformity with the provisions of the statute then in force.
Section 7, art. 10, chap. 103, Gross' Statutes 1868, declares
it to be the duty of the board of auditors to make a certificate,
to be signed by a majority of such board, specifying the
nature of the claim or demand against the town, and to
whom allowed, and then to cause such certificate to be deliv-
ered to the town clerk of such town, to be by him kept on file
in his office for the inspection of any of the inhabitants of
the town. So far as this record discloses, the auditors may
have complied literally with this provision of the statute—at
least no complaint is made they did not. The statute fur-
ther provided, the "aggregate amount" of claims audited shall
be "delivered to. the supervisor, to be by him laid before the
board of supervisors at their annual meeting," and then it is
declared to be the duty of the board of supervisors to cause
"the amount of said charges to be levied upon the property
of said town, and collected as other taxes are levied and col-
lected." The objection insisted upon is, the town clerk certi-
fied "the amount of town tax" to be raised was a certain rate

per cent to be levied upon each dollar's worth of real and personal property in the town, according to the assessed value, to defray town charges, instead of the "aggregate amount" of such claims or demands. It is not perceived the bill contains any allegation the town tax was illegal for any such cause, and that would seem to be a sufficient answer to the position taken. But it will be noted the statute then in force on this subject is silent as to whose duty it was to deliver a statement of the "aggregate amount" of the claims audited, to the supervisor, or as to what the certificate should contain. Any certificate by the town clerk, no matter in what form of words it was expressed, that would give the board of supervisors to understand definitely what amount of taxes was required to be levied for town expenses, would undoubtedly be sufficient. That the town clerk did by certifying the "amount of taxes," which is an equivalent expression with "aggregate amount," required to be levied to defray claims and demands audited against the town, was a certain rate per cent on the taxable property of the town. The needed information could as well be given by stating the rate per cent on the taxable property of the town according to its assessed value, as by stating the "aggregate amount" of such claims or demands. The rate per cent stated, if extended on each dollar's worth of real and personal property in the town, according to its assessed value, would produce the "aggregate amount" needed, and the "aggregate amount," if apportioned, would give the rate per cent stated. Either mode adopted would lead to the same result, and would be as definitely understood, and adopting one or the other mode would not in the slightest degree affect the justness of the taxes imposed.

*Second*—As to the objection the county board did not levy the taxes in question, it may be answered it was no more the business of the county board to *levy* the town taxes than it was its duty to *collect* such taxes. It was only the duty of

the board to *cause* the amount of the charges so certified to be levied on the property of the town, and collected "as other taxes are levied and collected." It stands admitted the town taxes were in fact levied, and no complaint is made any greater sum was levied than ought to have been extended for collection. It will be presumed such taxes were levied by the proper authority under the statute, until the contrary is made to appear. Any other rule would make it exceedingly difficult to collect the public revenues. All the statute made it the duty of the county board to do, was to *cause* the amount of the charges against the town to be levied upon the property of the town, and collected as other taxes are levied and collected. That, as we have seen, was done, and there can be no just ground for complaint on that score, as the very thing the law required to be done was in fact done by some authority. Because a party may have searched and found no order of the county board on record directing the amount of the charges against the town to be levied and collected, by no means proves the board did not *cause* such taxes to be levied as other taxes. No provision of the statute then in force has been cited that made it the duty of the county board to make a record of their action in such matters. The manner of causing the town taxes to be levied, even if the board omitted or neglected to make any record of its action, did not, and could not, affect injuriously the tax-payer. This court has had frequent occasion to say it would not entertain an objection to taxes levied by municipalities where the irregularities insisted upon do not affect unjustly the rights of the citizen. *Chiniquy* v. *The People,* 78 Ill. 570; *Purrington* v. *The People,* 79 id. 11.

A school tax was included in the judgment for taxes against the property of complainants, for which it was sold, and which it is said was void because a rate per cent in excess of that authorized by law was levied, and therefore it vitiated the sale.

The evidence concerning the school tax included in the judgment, of which complaint is made, is very meagre and unsatisfactory. No allegation is discovered, either in the original or amended bill, as to the school district in which these lots are situated, nor can it be ascertained from the evidence in what district they are situated. It does appear from a quotation from the judgment record introduced in evidence, a tax of three per cent was extended on the equalized value of each lot, but three per cent is authorized by the statute to be levied for "building purposes." Certificates from the directors of a number of school districts, stating the rate per cent required to be levied in their respective districts, were given in evidence, but no proof was made they comprised all the districts in the township. *Non constat,* there may have been other districts in which a tax for "building purposes" may have been authorized, and the papers lost from the files, or mislaid, so that they could not be or were not found. Enough has not been proven to warrant a court in declaring the school tax included in the judgment to be illegal and void.

It remains to consider alleged error, said to have occurred at and subsequent to the sale under the judgment of the county court. The first objection noted is, the lots against which judgment was rendered were not sold "separately and in consecutive order," as the law requires such sales to be made. There is no evidence in this record the lots were sold *en masse,* or in any other manner than the law directs. All the evidence offered was the certificates issued to the purchaser, but they afford no evidence the lots were not sold "separately and in consecutive order," as the statute requires. When a party buys one or more lots or tracts of land at a tax sale, the statute authorizes the county clerk to issue to him a certificate for the whole number, or for one or more of the lots by him purchased, as he shall elect, and the fact he may elect to have several lots or tracts of land included in

the same certificate, is no evidence such lots or tracts of land were sold *en masse*. It is apprehended what is known as the "sale and redemption book," used by the collector in making the sale, would afford the only evidence as to the manner in which the sales of the lots in this case were made, and that does not seem to have been introduced in evidence.

Elaborate arguments have been made upon the point no sufficient notice was given, either by the purchaser of the lots at the tax sale, or his assignee, as required by law, before a deed could be rightly made to the assignee. The precise question raised and discussed in this case was considered by this court in *Garrick* v. *Chamberlain*, 97 Ill. 620, and there is, therefore, now no necessity for discussing it again as a new question. It was proven in this case, as it was in *Garrick* v. *Chamberlain*, the assignee of the purchaser caused a notice to be served on the party in possession of the premises, more than three months before the time of redemption expired, that the lots were not assessed in the name of any person, and that the party so served with notice was the only person in the actual occupancy of the premises. That was regarded as a compliance with the statute, and that it was sufficient to comply with the statute to entitle the purchaser to take a deed. Some criticism is made on the affidavit of service of notice, that it does not set forth with sufficient certainty the party served with notice was in possession of the property at the date of the service. The fact might perhaps have been more clearly stated, but it is apparent from the reading of the affidavit the notice was served on the party in the actual occupancy of the premises on the 3d day of September, 1874, which was more than three months before the expiration of the time of redemption. The reading of the affidavit makes no other impression on the mind. It is wholly immaterial whether the party went upon the premises to make service of the notice. It was sufficient if he did in fact serve the notice on the only person in the actual posses-

sion of the premises in apt time, and that the property taxed had been assessed in no name. That brings the case precisely within the rule in *Garrick* v. *Chamberlain*, and that case is conclusive on this point in the case in hand.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*

Mr. Justice Dickey, dissenting:

Before and at the time of the tax sale, and subsequent to that time for more than two years, the owner of the property in question was Levi H. Thomas, and one Blanchard had an interest in the property as a trustee, under a deed of trust made by Thomas to secure to certain creditors of Thomas money due to them. The title of Thomas and the interest of Blanchard were shown by the contents of the books in the recorder's office. Thomas and Blanchard each was, during all that time, a resident of Cook county, with a place of business in the city of Chicago, and the name of each appeared in the directory for that city.

The only notice of the kind, as to time for redemption, was a written notice, served personally on the 3d day of September, 1874, on one P. N. Duval, being at that time (as it is claimed) the occupant, and the only occupant, of the land. No notice whatever was given, either personally, by publication, or otherwise, either to the owner, or to Blanchard, or to the creditors named in the deed of trust.

Section 5, of art. 9, of the constitution of 1870, says: "The right of redemption from all sales of real estate for the non-payment of taxes or special assessments, of any character whatever, shall exist in favor of owners and persons interested in such real estate for a period of not less than two years from such sales thereof. And the General Assembly shall provide by law for reasonable notice to be given to the

owners or parties interested, by publication or otherwise, of the fact of the sale, * * * and when the time of redemption shall expire : *Provided,* that occupants shall in all cases be served with personal notice before the time of redemption expires." The General Assembly, in an attempt to do the thing thus commanded by the constitution, provided, in sec. 216 of the Revenue law of 1872, that "hereafter no purchaser, or assignee of such purchaser, of any land, town or city lot at any sale of lands or lots for taxes or special assessments, * * * shall be entitled to a deed * * * until the following conditions have been complied with, to-wit : Such purchaser or assignee shall serve, or cause to be served, a written or printed (or partly written and partly printed) notice of such purchase on every person in the actual possession or occupancy of such land or lot, and also the person in whose name the same was taxed or specially assessed, if upon diligent inquiry he can be found in the county, at least three months before the expiration of the time of redemption on such sale. * * * If no person is in the actual possession or occupancy of such land or lot, and the person in whose name the same is taxed or specially assessed can not, on diligent inquiry, be found in the county, then such person or his assignee shall publish such notice in some newspaper printed in such county, * * * which notice shall be inserted three times—the first time not more than five months, and the last time not less than three months, before the time of redemption shall expire."

· It is insisted by appellant, that under this constitutional provision no notice to the owner was essential to the validity of a tax deed until the requisites and mode of such notice were prescribed by statute, and that hence a compliance with the express provisions of the statute, when enacted, is all that can be necessary to the right to a tax deed. I do not concur in this view. As I understand the constitution, it meant to provide, and in fact did provide, that in all cases of sale of

lands for taxes the owner should have a right of redemption for at least two years from the date of the sale, and should have an opportunity to make such redemption within the period limited, after having notice, by publication or otherwise, of the fact of the sale, and of the time when the time for redemption should expire; and it was left for the General Assembly to specify what mode of notice, other than by publication, should be deemed reasonable, and to fix upon some reasonable length of time in which such owner should have such notice before the expiration of the time for redemption. It was never meant that the constitutional right of the owner to reasonable notice (that he was liable to lose his land in that way) should be left to depend upon the action of the legislature. Under the constitution of 1848, the right to notice in this regard was granted and secured to occupants and persons in whose names the land was assessed. That constitution specified in detail the time and mode of giving such notice. By the constitution of 1870, this right to have such notice was granted to the. *owner*, and the legislative details as to time and mode (found in the constitution of 1848) are referred to the discretion of the General Assembly.

Keeping this in view, we find the act of 1872 to declare that where land is assessed or taxed in the name of any one as the owner, the purchaser at the tax sale may lawfully assume, for this purpose, that such person is in fact the owner, and that in such case personal notice on such person, if to be found in the county, (and if not, then notice by publication,) shall be deemed, for this purpose, notice to the owner, if the land be unoccupied, and in case the land be occupied, then, in *addition* to notice to the person in whose name the land is listed, a personal service upon the occupant shall be given. There is no provision, however, that personal service of notice on the occupant shall be sufficient, in case no name is given as that of the owner in the tax list, or that in such case no notice need be given the owner. In

that case the requirement of the constitution that the owner shall have reasonable notice, by publication or otherwise, remains, and the statute being silent upon the subject, the utmost that can be reasonably claimed in behalf of the holder of the certificate is, that he may give such notice to the owner as is, in fact, reasonable under the circumstances,—this to be judged of by the courts, whenever the same may come in question.

I think that where the title of the owner is shown by the recorded title papers in the public office of the recorder, reasonable diligence must be used to find and serve notice personally upon such owner, if a resident of the county, and in case of failure to find the owner, by reason of non-residence or otherwise, notice by publication, or some other reasonable mode, must be made before any tax deed can lawfully issue.

Attention has been called to certain remarks of the judge who delivered the opinion filed in the case of *Garrick* v. *Chamberlain*, 97 Ill. 620. In that case it seems notice was given only to the person in the actual possession of the lot, and not also to the owner of the lot, and it was objected that the notice was not sufficient, and this constitutional provision was cited. On that question it is said, in that opinion: "Proof was made of the service of notice upon the person who was in actual occupancy of the premises, and that he was the only one in such occupancy, and that the lot was not assessed in the name of any person. This we regard as a compliance with the statute, and that it is sufficient to comply with the statute." This remark, in that opinion, can not be regarded as binding authority. It never had the sanction of a majority of the court. Three of the judges dissented entirely to the conclusion reached in that case, and the fourth, concurring in the conclusion reached, declared that he did not concur in all the reasoning found in the opinion.

There were two other reasons assigned in that opinion why the objection of want of proof of sufficient notice of the fact

of the tax sale should not prevail in that case. First, that it was a bill to set aside the tax deed, and the bill stated several specific objections to its validity, but it did not charge that the tax deed had been issued without sufficient notice of the fact of the tax sale, or without notice to the proper parties, hence it was said the question was not in issue, and could not be raised, for the first time, in a court exercising appellate jurisdiction only. Again, it was said, as a reason why the invalidity of the tax deed could not be relied upon in that case, that before that suit a former bill by the same complainant, for the same purpose, had been brought against the same parties, and by order of the court had been dismissed without any qualification, such as without prejudice, and therefore the deed had been adjudged valid, and its validity could not again be questioned between the same parties. If the question now raised here was not in issue in *Garrick* v. *Chamberlain, supra,* and if the question could not be considered in that case because it had become *res judicata* in another case previously decided, the passing remark as to what the court thought on that subject, had it been before the court, could in no event be of much importance; and when a majority of the court expressly refuse to indorse the remark, it ought not to have the effect of controlling the ruling on a question directly presented for our determination.

I think the decree in this case ought to be affirmed.

SCHOLFIELD and MULKEY, JJ. also dissent.