## The Peoria, Decatur and Evansville Railway Company

### *v.*

### The People *ex rel.* D. P. Smith.

*Filed at Mt. Vernon January 25, 1886.*

1. ROAD AND BRIDGE TAX—*by whom to be levied—and of the action of the board of supervisors and of the county clerk, in respect thereto.* The statute (sec. 119, chap. 121,) requires the commissioners of highways to levy the taxes for the sums found by them necessary to be raised for road and bridge purposes, not exceeding forty cents on the $100, and report the amount and the rate per cent so levied, to the supervisors of their towns, and requires the supervisors to submit them to the board of supervisors of the county, for action, at their annual September meeting; and where no taxes are sought to be raised under section 116 and the proviso to section 119, no affirmative action of the board is required directing the extension of such tax by the county clerk. No order of approval is required of the board.

2. The record of the board of supervisors recited: "Now come the several supervisors, and file with the clerk the following levy: Fox, road and bridge, $300; Wade, road and bridge, $1550; Crooked Creek, road and bridge, $1000," etc.: *Held,* to show an action on the part of the board, and that their affirmative act in filing the reports of such levies was conclusive that they were satisfactory, and were filed with the county clerk for the purpose of being extended by him upon the tax books.

3. If the statements of the levy of a road and bridge tax, under section 119 of the Road law, show the action of the commissioners of highways to have been within their lawful authority, the board of supervisors can not reject and disregard the same; yet if it appears from the statements that they are not in truth what they purport to be, or that a majority of the commissioners have not concurred in levying the tax, or that the tax is levied for an unauthorized purpose, or that it exceeds the rate per' cent allowed by law, it would be the duty of the board to direct that the amount be not extended, and return the levies for correction, if susceptible of correction, and if not, that they be utterly disregarded by the county clerk.

4. While the statute does not direct that any record of the board of supervisors be made in respect to the road and bridge taxes levied by the commissioners, yet some record should be made showing the action of the board. But any record from which it can reasonably be concluded that the statements of the commissioners were laid before the board, and the levies were not ordered by that body to be not extended, and that they were delivered to the clerk afterward, will be sufficient to justify the clerk in extending such taxes.

5. The county clerk's duty of extending road and bridge taxes, under sections 116 and 119, is limited to extending the levy in the proper column, when the statements made by the highway commissioners are delivered to him by the county board for that purpose.

Appeal from the County Court of Jasper county; the Hon. James W. Gibson, Judge, presiding.

This was an application for judgment for delinquent taxes against the Peoria, Decatur and Evansville Railway Company. There was in evidence a proper description of the railroad property, affidavit of list of lands delinquent, and proof of publication of notice, etc. "It was then stipulated and agreed, by and between the parties to this proceeding, that all the taxes and assessments against the defendant in this suit, in said county, had been paid, excepting the road and bridge tax for the year 1884, levied in the townships

of Crooked Creek, $137.04; Wade, $133.44; Fox, $48.51; amounting in all to the sum of $319.   And that said townships had adopted what is known as the 'Labor System,' in the Road law."   The following were then offered and read in evidence by the collector:

"State of Illinois, } ss.
  *Jasper County.* }

"*To the supervisor of said town of Crooked Creek:*

"The commissioners of highways have ascertained and determined that the total amount of money necessary to be raised by tax on the real, personal and railroad property of the town of Crooked Creek, in the county aforesaid, the ensuing year, commencing on Tuesday next preceding the annual town meeting, 1885, for the following purposes, is as follows:

| | |
|---|---:|
| For the making and repairing of bridges, | $600 |
| For the payment of damages by reason of laying out roads and ditches, | 100 |
| For the purchase of implements, | 200 |
| For the payment of overseers of highways, | 100 |
| Total, | $1000 |

—Commencing on Tuesday next preceding the annual September meeting of the board of supervisors, 1884, making the total amount of money for the bridges and other purposes as above specified and enumerated, $1000, for raising which amount a tax has been levied on all the real, personal and railroad property in said town, of forty cents on the $100.

"Witness our hands this the 2d day of September, A. D. 1884.

WILLIAM KILGORE,
JOHN BOWERS,
KENISON HARKER,
*Commissioners of Highways.*

"Filed September 9, 1884.

H. K. POWELL, *Clerk.*"

"State of Illinois, ⎫
   *Jasper County*, ⎬ ss.
     *Town of Wade.* ⎭

               "Board of Commissioners of Highways.

"*To the supervisor of said town of Wade:*

"The commissioners of highways of said town have ascertained and determined that the total amount of money necessary to be raised by tax on the real and personal property of the town of Wade, in the county aforesaid, the ensuing year, commencing on Tuesday next preceding the annual town meeting, 1884, for the following purposes, is as follows, to-wit:

| | |
|---|---:|
| For the making and repairing of bridges, - - | $700 |
| For the payment of damages by reason of the opening, altering and laying out of new roads, - - | 300 |
| For the purchase of the necessary tools, implements and machinery for working the roads, - - | 200 |
| For the purchase of the necessary material for building and repairing roads and bridges, - - | 150 |
| For the pay of overseers of highways during the ensuing year, - - - - - - - | 200 |

—Commencing on Tuesday next preceding the annual town meeting, 1884, making the total amount of money for bridges and other purposes, as above specified and enumerated, fifteen hundred and fifty dollars ($1550,) for raising which amount a tax has been levied on the real and personal property in said town, of thirty cents on the $100.

"Witness our hands this 2d day of September, 1884.

                           F. M. Ross,

                           A. J. Wood,

                           J. J. Kinsel,

                 *Commissioners of Highways.*

"Filed September 9, 1884.

                 H. K. Powell, *Clerk.*"

"State of Illinois, ⎫
  Jasper County, ⎬ ss.
    Town of Fox. ⎭

"The commissioners of highways of the town of Fox have and do at this their meeting immediately preceding the annual meeting of the county board, A. D. 1884, determine that the sum of three hundred dollars ($300) must be levied on both real and personal property of said town for road and bridge purposes.

"Witness our hands this 2d day of September, A. D. 1884.

James B. Wilson,

Edward Kellum,

*Commissioners of Highways.*

"Filed September 9th, 1884.

H. K. Powell, *Clerk.*"

Petitioner then offered in evidence the tax judgment, sale, redemption and forfeiture record, containing the list of delinquent lands and lots, and a description of the property of defendant, with the amount of tax due thereon, which record had been filed in the office of the county clerk of said county more than five days prior to the commencement of the term of court at which this application was made. And thereupon the petitioner rested his application for judgment, and the defendant appeared by J. S. Stevens, its attorney, and filed the following objections to the rendition of said judgment:

"State of Illinois, ⎫ ss.
  Jasper County. ⎬

"*In the county court, to the May Term, A. D. '85.*

"In the matter of the application of D. P. Smith, treasurer and collector of said county, for judgment for the delinquent taxes for the year A. D. 1884, etc.

"And now comes the Peoria, Decatur and Evansville Railway Company, and shows to the court that it has paid all the legal taxes lawfully levied and assessed, and charged upon the tax books against it, for said year in said county; but

that it has not paid the tax denominated and charged against it upon said tax books as a road and bridge tax, and represented to be for road and bridge purposes, for the townships of Wade, Fox and Crooked Creek, in said county, and amounting against objector to $319; and that it is for this tax so remaining unpaid, that said treasurer and collector now asks judgment against objector, to which objector objects, for the following reasons :

"*First*—Said tax was charged and extended on said tax book against objector, by the county clerk of said county, without authority, without any direction or order of the board of supervisors of said county, and for each of these reasons said charge or tax is illegal and void.

"*Second*—Objector shows that said townships of Wade, Fox and Crooked Creek have adopted what is known as the 'labor system,' in the present Road and Bridge law of said State, and they each levy their tax for road and bridge purposes in accordance with the requirements of said law in townships having adopted said 'labor system;' that, as the law in such case requires, the commissioners of highways, in each of said townships, certified to their supervisors, respectively, the amount required for the various purposes specified in section 119 of said Road and Bridge law for said year, and that said supervisors, as the law requires, laid the same before the board of supervisors of said county, at its September meeting, A. D. 1884, for its action, as is shown by the following clause taken substantially from the record of said meeting :

" 'Now come the several supervisors, and file with the clerk the following levies : Fox, road and bridge, $300 ; Wade, road and bridge, $1550 ; Crooked Creek, road and bridge, $1000.'

"Objector further shows that no other notice than the foregoing was taken of said tax by said board; that no action was taken by it on said tax ; that no order or direction of any kind was made by said board to the said county clerk of said county, to extend said tax ; that he extended and charged

the same without authority; and that in consequence said. tax was extended and charged against objector unlawfully and without authority, and is therefore illegal and void, and. its collection illegal.

"*Third*—That the assessment and levy of said tax was not certified to the county clerk of said county as the law requires,. or by a person or persons having competent authority so to· do; that he, in no event, had sufficient jurisdiction of the· same to give him the right or authority to extend it upon said tax books, or charge it against objector, and that in. consequence said tax is illegal and void.

"*Fourth*—Said tax was improperly extended, and is illegal. and void.

"*Fifth*—Said tax was extended and charged without author-· ity, and without the clerk of said county having jurisdiction of the same.

·"*Sixth*—Other reasons appearing in the proceedings of the· assessment and levy of said tax."

And the defendant, to sustain said objections, offered in· evidence the following extract from the record of the September meeting, A. D. 1884, of the board of supervisors of said . Jasper county: "Now come the several supervisors, and file· with the clerk the following levies: Crooked Creek township, road and bridge, $1000; Wade township, road and bridge, $1550; Fox township, road and bridge, $300."

It was then stipulated and agreed by and between the parties to this proceeding, that the foregoing extract is the· only matter in the record of said September meeting of said board of supervisors concerning the levy of said road and. bridge tax, or referring thereto in any way, and that no action of said board was ever taken with reference to said taxes other than shown by said record, and thereupon the defend-· ant rested its objections.

This being all the evidence offered on either side, the court· overruled the objections and rendered judgment as prayed.

by the collector. The railroad company brings the case to this court by appeal, and assigns errors, bringing in question this ruling of the court.

Messrs. Stevens, Lee & Horton, and Mr. Hale Johnson, for the appellant.

Mr. James W. Gibson, and Mr. Ben. F. Harrah, State's attorney, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

Section 119, of chapter 121, entitled "Roads," etc., (2 Starr & Curtiss' Annotated Statutes, p. 2168,) reads thus: "The highway commissioners of each town shall annually ascertain, as near as practicable, how much money must be raised by tax on real, personal and railroad property, for the making and repairing of bridges, the payment of damages by reason of the opening, altering and laying out of new roads and ditches, the purchase of the necessary tools, implements and machinery for working roads, the purchase of the necessary material for building or repairing or draining roads and bridges, the pay of the overseer of highways during the ensuing year, and for the payment of all outstanding orders drawn by the commissioners on their treasurer, commencing on Tuesday next preceding the annual meeting of the county board in September,—which tax shall be extended on the tax books according to the assessment of the current year; and shall levy a tax on all the real, personal and railroad property in said town, not exceeding forty cents on the $100; and they shall give to the supervisor of the township, and in Cook county to the county board, a statement of the amount necessary to be raised, and the rate per cent of taxation, signed by said commissioners, or a majority of them, on or before the Tuesday next preceding the annual September meeting of the board of supervisors, or the county board of

Cook county, who shall cause the same to be submitted to said board for their action at such September meeting of said board."

Counsel for appellant insist that this requires the board of supervisors to take affirmative action upon the reports of the commissioners of highways, which affirmative action is jurisdictional, and that therefore the county clerk extended the taxes here in question without authority of law. But what affirmative action does it require? It can not be in declaring the tax to be levied, for language can not be plainer than that which declares that the commissioners of highways shall levy the tax. The sole difficulty is in ascertaining for what purpose the statements of the amounts necessary to be raised, and the rate per cent of taxation, are to be laid before the board of supervisors for their action.

It is stipulated that these townships had adopted what is known as the "labor system" in the Road law. Under that system it is provided by section 110, chapter 121, (2 Starr & Curtiss' Annotated Statutes, p. 2167,) that "every overseer of highways shall deliver to the supervisor of his town, * * * at least five days previous to the annual meeting of the board of supervisors, the lists furnished by the commissioners of highways, containing the land and personal property road tax, with an affidavit thereto, sworn to before the supervisor of the town, or some justice of the peace of the county, that on all tracts of land or railroad property on such list opposite which the word 'paid' is written, such tax is paid, and that on all tracts of land on railroad property on such list opposite which the word 'paid' is not written, such tax is due and remains unpaid, according to the best of his knowledge and belief." The 116th section of the same statute makes it the duty of the supervisors of the several towns to receive the list when delivered pursuant to section 110, and lay the same before the board of supervisors of the county. And the next section (*i. e.*, 117,) provides: "It shall be the duty of the

board of supervisors * * * to cause the amount of arrearages° of the road tax returned by the overseer of highways, to the supervisors, as provided in section 110 of this act, to be levied on the lands returned, and to be collected in the same manner that other taxes of the county are levied and collected, and to order the same, when collected, to be paid over to the commissioners of highways of the town." So, also, by the *proviso* to section 119, where an additional tax has been voted at a town meeting for repairing roads and bridges, the board of supervisors shall cause the same to be extended on the tax books.

Manifestly, therefore, it was designed by the General Assembly that the tax-payers should have the guaranty of protection against unauthorized and excessive burdens of taxation, in these respects, afforded by the supervision of the board of supervisors. Although that board could not reject the action of the commissioners of highways, when within their lawful authority, yet we think, beyond question, that if it appeared from the statements laid before the board, that they were, in truth, not what they purported to be, or that a majority of the commissioners had not concurred in levying the tax, or that the tax was levied for a purpose not authorized by law, or that it exceeded the rate per cent allowed by law, it would be the duty of the board to direct that the amounts be not extended, but that the statements be returned for correction, if susceptible of correction, and if not, that they be utterly disregarded by the clerk. In respect to these matters, the duty under these sections is not on the clerk, as it sometimes is, but on the board of supervisors, and the clerk's duty is limited to extending the levy in the proper column when the statements are delivered to him for that purpose. It would, moreover, seem desirable that the statements required by section 119 should be before the board of supervisors, to enable them to intelligently make the requisite orders under section 116 and the *proviso* to section 119, in

16—116 Ill.

order that the amounts of such taxes be included and extended with the tax assessed under section 119, as elsewhere required. But in the present instance there were no taxes to be extended either under section 116 or the *proviso* to section 119, and so no orders of the board in that regard could be made. All that was to be done was therefore simply to cause the statements contemplated by section 119 to be delivered by the board to the clerk, that he might extend the levies in the proper column. There was no order of rejection or temporary suspension required by the facts.

It will be observed the statute requires no order of approval to be entered. It does not even direct that any record in such cases be made. Still, inasmuch as a record is the proper mode of showing the action of the board, it will be conceded there should be some record, and to avoid all question and doubt in such cases, it should fully recite the action of the board. But any record from which it can reasonably be concluded that the statements were laid before the board, and the levies were not ordered by the board to be not extended, and that they were delivered to the clerk afterwards, would clearly be sufficient, because those embrace the material requirements of the statute. The record here professes to be, and we must, because it is uncontradicted in any way, assume as a fact that it is, the record of the board of supervisors, and not of the action of members of the board, apart from the board. It recites: "Now come the several supersors and file with the clerk the following levies." This necessarily implies that the levies were then before the board, for otherwise it is impossible that the several supervisors could then, as a part of the proceedings of the board, file them with the clerk. The affirmative act of filing them with the clerk is conclusive that they are satisfactory, and that they are filed with the clerk to be extended, for otherwise the order would be that they be not filed. When filed with the clerk they can be filed for no other purpose than that of

extension, and his duty, under the law, to. then proceed and extend the levies at once attaches. These views have. had our sanction in previous cases, and we are convinced that they should be adhered to. *Gage* v. *Bailey et al.* 102 Ill. 11.

There is another reason affecting the exercise of the discretionary powers of the board of supervisors why these statements should be laid before the board at its annual September meeting, in which every tax-payer has a vital interest, and yet which does not require that the board shall make any order respecting them. Section 58, of chapter 34, (1 Starr & Curtiss' Ann. Stat. p. 662,) authorizes the board of supervisors "to appropriate funds to aid in the construction of roads and bridges, in any part of the county, whenever a majority of the whole board of the county may deem it proper and expedient." By the preceding section 25, of the same chapter, in the sixth clause, power is vested in the board "to cause annually to be levied and collected taxes for county purposes, including all purposes for which money may be raised by the county by taxation." And by section 122, chapter 120, (same edition of Statutes, p. 2065,) "the amount of all taxes to be raised for county purposes must be determined by the board at its annual September meeting." It must be apparent that to know what amount should be raised to meet anticipated appropriations to aid in the construction of roads and bridges, it would be important to know what amount had been levied by the commissioners of highways in the several townships for those purposes. Moreover, in raising money for all discretionary appropriations, whether for roads and bridges, or for other purposes, in a moral point of view, at least, the board of supervisors owe the duty to the tax-payers, and the tax-payers have a right to demand, that the amount of taxation for other purposes shall be taken into consideration, and that the burden of taxation shall always be made as light as a wise regard for the public welfare will admit, and it is therefore reasonable to conclude that these

considerations affect the action of the board, in some measure, in levying county taxes. It is true this is but information which might be afforded by the clerk without having the originals before the board, yet it is for the legislature, and not the courts, to prescribe what and by whom information shall be laid before the board. It might be an important protection to the tax-payer, in many instances, to have the supervision of the board of supervisors, instead of the county clerk, against imposition and illegal action in the matter of such taxes, and if so, then it would also be important that the originals themselves, rather than the conclusions thereon of the clerk, should be before them for information in the respect last considered.

We see no cause to disturb\ the judgment below. It will therefore be affirmed.

*Judgment affirmed.*