## GAGE *v.* PUMPELLY & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

Submitted November 2, 1885.—Decided November 23, 1885.

In Illinois a judgment by default in a proceeding in a county court under the statutes of that State for the collection of taxes on real estate, by sale of the property, is not conclusive upon the tax-payer, and may be impeached collaterally.

Under the laws of that State, as construed by its courts, if any portion of a tax assessed upon real estate, and levied and collected by sale of the property, is illegal, the sale and the tax deed are void; and may be set aside by bill in equity.

In a proceeding in equity in a court of the United States to set aside a tax sale in Illinois as illegal, the complainant should offer to reimburse to the purchaser all taxes paid by him, both those for which the property might have been legally sold, and those paid after the sale.

Appellees' testator, plaintiff below, was in the possession, and claiming to be the owner, of a certain lot of ground in Chicago, for which the appellant, who was defendant below, held deeds executed by the county clerk of Cook County, Illinois, on the 6th of September, 1877, and 4th of February, 1880; which deeds were based on sales made October 27, 1874, and October 3, 1877, for the non-payment of taxes. These sales were in pursuance of judgments of the County Court, rendered at the instance of the treasurer of Cook County, who was, *ex officio,* the collector of its revenue.

To the proceedings in the County Court the plaintiff did not appear, nor was he a party thereto otherwise than by publication in a newspaper, giving notice of the application for judgments, and, subsequently, of the order for the sale of the property for non-payment of the taxes assessed against it.

The present suit was brought for the purpose of removing the cloud on the plaintiff's title, arising from the before-mentioned sales and tax deeds, and to obtain a decree requiring the defendant to convey to the plaintiff such rights and interests as he had thus acquired.

The plaintiff in the bill avows his readiness and willingness

to pay not only the defendant's disbursements for the legal taxes included in the judgments of the county court, but such additional sum as to the court seemed proper.

It was adjudged by the Circuit Court that the plaintiff should pay the redemption moneys allowed by statute, had the judgments and sales been only for legal taxes, with six per cent. interest, in each case, from the expiration of two years after the tax sale; also, such other taxes as defendant subsequently paid upon the lot in question, with interest at the like rate on the amount of each payment. The aggregate of such payments was ascertained to be $1118, as of May 1, 1882. The defendant, having declined to accept that sum with interest, and the same having been paid into court for his use, it was finally adjudged that the title acquired by defendant, in virtue of the sales and deeds, be set aside and held for naught as against plaintiff, and that the deeds be delivered up and cancelled.

*Mr. Augustus N. Gage* and *Mr. Albert G. Riddle* for appellant.

I. The service of notice upon which the tax deed issued to appellant September 6, 1877, and the affidavits filed with the county clerk to show such service of notice, were sufficient to authorize the county clerk to issue the deed to appellant. *Garrick* v. *Chamberlain*, 97 Ill. 620; *Gage* v. *Bailey*, 102 Ill. 11; *Frew* v. *Taylor*, 106 Ill. 159.

II. It does not appear that any of the $3700 for excessive compensation to the county commissioners was extended as a tax.

III. It does not appear that any of the items of the city taxes of 1875, charged by the bill to be in excess of the constitutional limits, were extended with the taxes against this property, and for which the property was sold and the deed issued to appellant February 4, 1880. The county clerk makes a voluntary statement that the records of his office show the valuation of the property of Chicago to have been $174,556,474, in 1875; by a similar statement of what he considers a fair deduction from his records, the county clerk states in other cer-

tificates that the items of the city tax complained of were extended on the collector's warrant for 1875. These voluntary certificates of the county clerk are not evidence. 1 Greenleaf, Ev. § 498. By statute, certificates of various officers may be used as evidence, but only in such manner and to the extent prescribed by the statute. These certificates do not come within the statutory provisions. It is insisted that they are not competent evidence, as the records should have been produced in order that the court might pass upon the facts disclosed thereby.

IV. The judgments of the County Court of Cook County, under which appellant purchased, are *res judicata*, and cannot be collaterally attacked. Under the statutes of Illinois this court is a court of record, with general original jurisdiction in the matter of the sale of lands for delinquent taxes. *Graceland Cemetery Co.* v. *People*, 92 Ill. 619. Being a court of record, with jurisdiction over the subject-matter, its judgment is conclusive while in force. *Mayo* v. *Ah Long*, 32 Cal. 477; *Porter* v. *Purdy*, 29 N. Y. 106; *Graceland Cemetery Co.* v. *People*, above cited; *Chicago Theological Seminary* v. *Gage*, 12 Fed. Rep. 398. The action of the court in such matters is *in rem*. Rev. Stat. Ill. 1874, ch. 120, § 191; *People* v. *Nichols*, 49 Ill. 517; *Pidgeon* v. *People*, 36 Ill. 249. That being the case, the judgment is binding on all the world. Wells, Res Judicata, 504. For the binding force of judgments *in rem* see *Croudson* v. *Leonard*, 4 Cranch, 434. And the proceedings are binding against all, whether parties to the suit or not. See *Gelston* v. *Hoyt*, 13 Johns. 561; *S. C.*, 3 Wheat. 246. *Graceland Cemetery Co.* v. *People*, above cited; *McCahill* v. *Ins. Co.*, 11 C. E. Green (2 3 N. J. Eq.) 531. In Illinois it is held that a record of a court imports verity and must be tried by itself. *Young* v. *Thompson*, 14 Ill. 380. In *Hobson* v. *Ewan*, 62 Ill. 146, it was held that the finding of the court cannot be questioned in a collateral proceeding, when it has jurisdiction. See also *Goudy* v. *Hall*, 36 Ill. 313; *Young* v. *Lorain*, 11 Ill. 624; *Conover* v. *Musgrave*, 68 Ill. 58; *Osgood* v. *Blackmore*, 59 Ill. 261; *Prescott* v. *Chicago*, 60 Ill. 121; *Feaster* v. *Fleming*, 56 Ill. 457. In *Rogers* v. *Higgins*, 57 Ill. 244, the court say:

" The principle of *res judicata* embraces not only what actually was determined in the former case, but also extends to any other matter, properly involved, and which might have been raised and determined in it. The valuation of property by the assessor for taxation is conclusive, and the courts have not jurisdiction to review or alter the same. A tax based upon the assessment is like a judicial sentence, and can be assailed only for fraud or want of jurisdiction. *Spencer* v. *People*, 68 Ill. 510, and cases cited; *Republic Life Ins. Co.* v. *Pollak*, 75 Ill. 292; *People* v. *Big Muddy Iron Co.*, 89 Ill. 116. When the opinion of the Supreme Court of Illinois in the *Graceland Cemetery* case was delivered, there was no question as to the effect to be given to a judgment of the County Court for taxes. Such judgment then stood upon the same footing as any other judgment *in rem*, or any judgment *in personam*. There is now a disposition to draw a distinction between a judgment rendered in a case where the owner of the land objected to the entry of the judgment, and a case where the judgment for the taxes was entered by default, and the authority for this distinction is traced to the opinion in the *Graceland Cemetery Case*. The cases of the *Belleville Nail Co.* v. *People*, 98 Ill. 399, and *Gage* v. *Bailey*, 102 Ill. 11, are relied upon for this distinction. But the cases of *Gage* v. *Busse*, 102 Ill. 592, and *Gage* v. *Parker*, 103 U. S. 528, seem to dispose of the whole question. Although the court was misled in two cases by an erroneous construction of a third, as soon as the matter was presented in its true light in the cases of *Gage* v. *Busse* and *Gage* v. *Parker*, *supra*, the court took steps immediately to correct the error of decision above referred to. Very shortly after the determination of the case at bar in the Circuit Court, the learned judge before whom it was tried had occasion to again pass upon the same questions here presented under this head, and after a more careful and elaborate argument by counsel, he reviewed to some extent the questions here presented, and arrived at the conclusion now pressed. The opinion of the judge was subsequently published; and by reference to that additional light will be thrown upon the questions under discussion. *Chicago Theological Seminary* v. *Gage*, 12 Fed. Rep. 398.

V. It does not appear by this record· whether objection was made to the rendition of the judgments for the sale of the land for taxes.

The records here show, in each case, certain objections were filed to the rendition of judgment for the delinquent taxes; this appears from the recitals in the judgment itself, without specifying for whom, or by whom, such objections were filed. It not appearing that the judgments in this case were entered by default, or that they were not entered upon a contest upon the merits, there cannot be (under any construction that may be given the decisions of the Supreme Court of Illinois) any right to grant relief in this case upon a collateral attack of the judgment of the County Court.

*Mr. Edward G. Mason* for appellees.

Mr. JUSTICE HARLAN delivered the opinion of the court. After stating the facts in the language reported above, he continued :

The Constitution of Illinois declares that the right of redemption from sales of real estate for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested for a period of not less than two years from such sales. And it imposes upon the general assembly the duty of providing by law " for reasonable notice to be given to the owners or parties interested, by publication or otherwise, of the fact of the sale of the property for such taxes or assessments, and when the time of redemption shall expire : *Provided,* That occupants shall in all cases be served with personal notice before the time of redemption expires." Art. IX, § 5.

By the statutes in force when these sales were had, no purchaser, or the assignee of any purchaser, of land, town or city lot, at any sale for taxes or levies authorized by the laws of the State, was entitled to a deed for the lands or lots so purchased, until he served, or caused to be served, a written or printed, or partly written and partly printed, notice of his purchase " on every person in actual possession or occupancy of such land or

lot, and also the person in whose name the same was taxed or specially assessed, if, upon diligently inquiring, he can be found in the county, at least three months before the expiration of the time of redemption on such sale, in which notice he shall state when he purchased the land or lot, in whose name taxed, the description of the land or lot he purchased, for what year taxed or specially assessed, and when the time of redemption will expire. If no person is in actual possession or occupancy of such land or lot, and the person in whose name the same was taxed or specially assessed, upon diligent search and inquiry, cannot be found in the county, then such person or his assignee shall publish such notice in some newspaper printed in such county, . . . which notice shall be inserted three times, the first time not more than five months, and the last time not less than three months, before the time of redemption shall expire." Rev. Stat. Ill. 1874, ch. 120, p. 893.

The bill impeaches the defendant's title, in respect of the first deed he received, upon the ground that it was acquired in violation of these constitutional and statutory provisions; and, in respect of his title under both deeds, upon the ground that the assessment of taxes upon the lot in question, for the non-payment of which the County Court ordered the sales, included, in each instance, illegal taxes, for which the premises were not liable, and which the owner was not bound to pay. The appellant insists that these objections to his title are so far concluded by the judgments of the County Court that they cannot be urged in any collateral proceeding or suit, the only remedy of the owner of the property being, it is contended, by appeal to the Supreme Court of the State. His argument is, that by the Constitution and laws of the State, the County Court is a court of record, with general original jurisdiction in the matter of the sale of lands for delinquent taxes; that proceedings in such cases are *in rem* against the property assessed; and that judgment therein rendered is conclusive upon the taxpayer, so long as it remains unmodified by the court which rendered it, or until it is set aside in some direct mode for fraud or collusion, or is reversed upon appeal for error. In support of the general rule that forbids collateral attack upon the judg-

ments or decrees of a court having jurisdiction of the subject-
matter and of the parties, and where the want of jurisdiction
does not appear upon the record, numerous authorities are cited
by appellant's counsel.   But they have no application to cases
like the present one, as the settled course of decision in the
highest courts of the State abundantly shows.   It will be well
to examine a few of the cases determined in that court.

In *McLaughlin* v. *Thompson*, 55 Ill. 249, which was an ac-
tion of ejectment, in which the plaintiff asserted a tax title, the
validity of which the defendant disputed, upon the ground that
the sale was, in part, for taxes levied by a county commission-
er's court, at a time other than that prescribed by the statute,
the court said : " The evidence shows that this county tax
entered into and formed part of the judgment, and the sum
for which the land was sold.   That tax being illegal, appel-
lant, or those under whom he claims, were not required to pay
it, nor did the law impose the duty of redeeming from the sale.
And it has been repeatedly held that, if any portion of the tax
is illegal, or the judgment is too large, only to the extent of a
few cents, the sale and tax-deed will be void.   This being so,
the tax deed conveyed no title, and hence there could be no
recovery under it, as the plaintiff in ejectment must, as in other
cases, establish his right to recover."

A case much relied upon by counsel for appellant is *Grace-
land Cemetery Co.* v. *People*, 92 Ill. 619.   That was an appeal
from a judgment rendered by a County Court against certain
lands belonging to the cemetery company for the taxes of
1871 to 1874 inclusive.   It appeared that, in 1873, application
was made to the County Court for judgment against the lands
for the taxes of 1871.   The company resisted judgment upon
the ground that the lands were exempted by law from taxation.
After trial the defence was sustained.   A similar application
was made for judgment for the taxes of 1872, 1873 and 1874.
It was again resisted, and the exemption again sustained.   No
appeal or writ of error was prosecuted from either of those
judgments.   Nevertheless, in 1879, another application was
made for judgment against the same lands for the taxes for
1871 to 1874 inclusive, and judgment was then rendered by

the County Court against the company. The Supreme Court of Illinois reversed the latter judgment, upon the ground that the former judgments in favor of the company, in respect of its claim of exemption from taxation, having been rendered after a trial on the merits—the court having jurisdiction of the parties and the subject-matter—were, even if erroneous, conclusive so long as they were not reversed or modified in some legal proceeding instituted for that purpose. The court observed in that case, that it was "clear, upon principle and authority, there is no difference between a judgment rendered in a proceeding to collect taxes and any other judgment, so far as being binding on the parties is concerned."

That case is cited by counsel in support of the proposition that the judgment of the County Court, in respect of the premises here in question, is conclusive against the owner, although he did not appear and resist the application for judgment. But that the court did not intend so to decide is clear from its language in *Belleville Nail Co.* v. *People*, 98 Ill. 399, 483, where it was said : "In *Graceland Cemetery Co.* v. *The People*, 92 Ill. 619, we held, where the owner of the land appeared in such a proceeding, filed objections and contested the liability of his land for the tax claimed, that the judgment against the land for the tax was conclusive against him of the liability of the land for the tax, in a collateral proceeding. But it is only in the case of such appearance and defence that we regard the judgment as conclusive." It was further observed in the same case, that the declaration of the statute that the tax deed made upon a sale under a judgment for taxes shall be *prima facie* evidence of certain enumerated things requisite to a correct judgment, "shows the intention of the statute that the judgment was not to have the same effect of conclusiveness which is given, collaterally, to ordinary judgments rendered by default, where personal service has been had. There is in these cases no personal service, but only publication of notice in a newspaper that application will be made for judgment." These principles were reaffirmed in *Gage* v. *Bailey*, 102 Ill. 11, which was a suit in equity to set aside the sale and conveyance of lands for taxes upon several grounds, which, as the owner

did not appear in the County Court and contest the application for judgment for the tax assessed against his property, were fully considered and passed upon.

But the latest adjudication by the State court of the question under consideration was *Riverside Co.* v. *Howell*, 113 Ill. 259. That was ejectment for the recovery of land, the defendant claiming title under a tax deed based upon a judgment of the County Court. The validity of the sale was questioned upon the ground, among others, that a part of the taxes, for the non-payment of which the sale was ordered, were illegal and void. The argument was made there, as in this case, that the judgment of the County Court was conclusive as to all matters that could, or ought to have been, passed upon in rendering it; and if it included too much taxes, or illegal taxes, it was only error to be remedied by appeal. But the court, finding that certain taxes included in the judgment were invalid, held that no title passed by the sale, observing that "the authorities are to the effect, that when a part of the tax for which a sale of real estate is made is illegal, the sale is void," citing *McLaughlin* v. *Thompson*, 55 Ill. 249; *Kemper* v. *McClelland's Lessee*, 19 Ohio, 308; *Gamble* v. *Witty*, 55 Miss. 26; Cooley on Taxation, 295, 296; *Hardenburg* v. *Kidd*, 10 Cal. 402. In the same case the court reaffirmed the doctrine laid down in *Belleville Nail Co.* v. *People*, 98 Ill. 399, *Gage* v. *Bailey*, 102 Ill. 11, and other cases, to the effect, that a judgment by default, in a tax sale proceeding, was not co clusive upon the taxpayer, but could be impeached collaterally—distinguishing that class of cases from those where sales are made to satisfy special assessments, in respect of which it was said, that "if the property-owner fails to make his objections in the proper place, and the assessment is confirmed, then he may well not be permitted to go behind the confirmation," when steps are taken to enforce payment.

These decisions establish a rule of property which determines the present case; for, without reference to other objections urged to the validity of the sales and deeds under which appellant claims title, it satisfactorily appears from the proof: 1. That the taxes, for the non-payment of which the first sale

was had, included taxes to meet allowances for the per diem and mileage of county commissioners, in excess of what the statute authorized. 2. That a large part of the taxes, for the non-payment of which the second sale was had, was based upon items in the ordinances of the city of Chicago, representing as well indebtedness which that city could not, under any circumstances, legally contract, as indebtedness which was in excess of the limit imposed by the State Constitution upon counties, cities, and other municipal corporations. *Law* v. *People*, 87 Ill. 385.

These grounds of objection to the title of the defendant were, under the settled law of the State, open for consideration in this suit. Being well founded, the conclusion must be that the sales at which the defendant purchased, and, consequently, the deeds which he received, were ineffectual to defeat the title of the owner of the lot in question. By the decree, the defendant receives all that he is entitled to demand as a condition precedent to his surrender of such title as he acquired by his purchase; indeed, he received more than should have been awarded to him; for, while, as a condition of granting the relief asked, the tax-payer was bound to do equity, and, therefore, should reimburse the purchaser to the extent of all taxes paid by him, whether those for which the property was sold, or those subsequently levied thereon and paid by him, with interest on each sum, *Gage* v. *Busse*, 102 Ill. 592; *Smith* v. *Hutchinson*, 108 Ill. 668; *Peacock* v. *Carnes*, 109 Ill. 100, the defendant seems to have been allowed, in the present case, among other sums, double the amount of the taxes for which the lot was sold. Of this error in the decree the appellees complain, but it cannot be considered upon this appeal by the purchaser at the tax sale; and, perhaps, under the statutes regulating the jurisdiction of this court, it could not have been the subject of a separate appeal by the owner of the lot.

We perceive no error in the decree, and it is

*Affirmed.*