## GEORGE v. MUTUAL INVESTMENT & AGENCY CO.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1922.)

No. 5905.

1. **Appeal and error ⟨⟩919—On appeal, matter stricken from answer presumed to be true.**

Where motion by plaintiff-appellee to strike portions of the answer was sustained, the court on appeal must accept for the purposes of appeal the statement of facts therein as true.

2. **Taxation ⟨⟩309—Assessment requisite to levy and collection.**

There must be an assessment of property for taxes in order that the levy of taxes and proceedings for collection thereof may be legally carried on.

3. **Taxation ⟨⟩734(3)—Tax title founded on sale of land grant assessed to unknown owners held good.**

Under Comp. Laws N. M. 1897, §§ 4031, 4041, 4048, and Laws. N. M. 1899, c. 22, §§ 17, 18, 21-23, and chapter 49, where a land grant was an old one, and there were numerous heirs and assigns of the original grantee, an assessment to unknown owners was presumably correct, in the absence of a showing that the assessor found it practicable to obtain the names of the owners, and certificate of sale based thereon would be valid, although only basis for legal title to the purchaser of that portion of the tract or subdivision of the tract upon which taxes had not been paid, under Laws N. M. 1899, c. 22, § 25, protecting those owning tracts in severalty who had paid their taxes.

4. **Taxation ⟨⟩421(8)—Description naming land grant held sufficient.**

Assessment of a land grant as "Elena Gallegos grant, Unk. owners, confirmed December 27, 1887, area in Bernalillo county, 35,080 acres," was a sufficient description.

5. **Taxation ⟨⟩688—Inclusion of illegal levies in the taxes for which tax sale was made held not to invalidate sale, in view of curative statute.**

That illegal levies were included in the taxes for which a tax sale was made, being a mere irregularity, not a jurisdictional defect, *held* not to invalidate the sale under the New Mexico curative statute (Laws N. M. 1899, c. 22, § 25) curing defects and objections except that taxes were paid or that the land was not subject to taxation.

6. **Taxation ⟨⟩688—Curative statute limited to irregularities.**

Curative statutes cannot validate an assessment void for want of jurisdiction, and the power by a curative statute to cure defects in assessments must be limited to irregularities.

7. **Taxation ⟨⟩648—Collateral objection that illegal levies were included in tax sale held barred by judgment.**

Under Laws N. M. 1899, c. 22, §§ 5, 15, 17, 18, 21, 23, where judgment for sale of land for delinquent taxes was rendered and not appealed from, it estopped the owners from collaterally raising the objection that illegal levies were included in the taxes for which the tax sale was made.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action to quiet title by the Mutual Investment & Agency Company against William George, trustee. From judgment for plaintiff, defendant appeals. Affirmed.

A. B. McMillen, of Albuquerque, N. M., for appellant.

J. O. Seth, of Santa Fé, N. M., James W. Norment, of Albuquerque, N. M., and J. H. Crist, of Santa Fé, N. M., for appellee.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

KENYON, Circuit Judge. Appellee, plaintiff in the trial court, brought this action against several hundred defendants, including appellant herein, to quiet title to a certain tract of land consisting of 35,084.78 acres in New Mexico, known as the Elena Gallegos land grant. Appellee's alleged title arose out of a sale of said tract of land for delinquent taxes for the year 1908, its purchase by the county of Bernalillo, N. M., the transfer of the certificate of sale, and the making of tax deed to James W. Norment, and various conveyances on to appellee.

Appellant's claim is that he is the owner of the east 30,000 acres of the Elena Gallegos land grant, and in paragraph 7 of the answer sets forth certain alleged illegal taxes assessed and levied as part of the levy preceding the sale for taxes.

Appellee moved to strike out all of paragraph 7 of the answer except the last subparagraph, which subparagraph sets up that the land was not subject to taxation, and that all taxes legally assessed against said grant were paid; the theory of the motion being that paragraph 7 of the answer set forth matters which amounted to a collateral attack on a tax judgment, and further that the curative statute of New Mexico estopped appellant from raising the objection to taxes set forth in said paragraph. The motion was sustained by the court.

The assignments of error relate entirely to the action of the court in sustaining the motion with relation to paragraph 7 of the answer. If the matters set forth in this paragraph could be urged as against the tax sale and the tax title, then it was error, of course, to sustain the motion. If these matters could not be considered either by virtue of a judgment for the taxes having been rendered in a court of competent jurisdiction, or by virtue of the curative act of New Mexico, then the action of the court was correct. As a correct conclusion in this case is dependent upon the considerations suggested in said paragraph 7, and as this case is an action to quiet title where plaintiff-appellee must recover on the strength of its own title, we believe all the questions suggested in paragraph 7 of the answer can properly be taken into consideration by this court regardless of the ruling of the trial court, and that the question of whether or not error was committed in sustaining the motion is rather immaterial.

The issues briefly stated are these: First, was there a valid assessment and levy before the sale of the real estate for taxes? Second, is the fact that certain illegal taxes were included in the levy sufficient to invalidate the entire levy?

[1] As the motion to strike was sustained, we must accept for the purposes of this appeal the statements of fact therein as true. Hence we must accept as true that certain illegal taxes were included in the legal taxes levied against the land.

[2] I. It is elemental that there must be an assessment of property for taxes in order that the levy of taxes and proceedings for collection thereof may legally be carried on. This property was assessed to un-

known owners and assessed as "Elena Gallegos grant, Unk. owners, confirmed December 27, 1887, area in Bernalillo county, 35,080 acres."

[3] The tax proceedings were under the provisions of the Compiled Statutes of New Mexico of 1897, and under chapters 22 and 49 of the Session Laws of 1899 of the Territory of New Mexico, which were then in force. Under certain sections of these Compiled Statutes of 1897 the inhabitants of the territory were required to list property for taxation.

Section 4031 of said statutes provides that, if the owner or claimant of any property not listed was absent or unknown, the assessor could make an assessment of the value of the property, and, if the owner were unknown, the property could be assessed to unknown owners.

Section 4041 provides that, where a tract of land is claimed by several persons, and the same is not listed for taxes, the assessor shall make an assessment of the value of the tract and list and assess the same to unknown owners using such description as he can obtain from the public records or otherwise.

Section 4048 provides that the county commissioners of each county shall constitute a board of equalization. At different times they are required to correct the assessment roll and to notify persons affected. An appeal is allowed from the decision of this board to the territorial board of equalization.

Chapter 22 of the Session Laws of 1899 of New Mexico is a statute dealing with the collection of delinquent taxes and providing that, where taxes are delinquent, the collector of the county must prepare and publish notice in the official newspaper of the county, or, if there be none, then by posting in front of the courthouse and publishing with the delinquent tax list a notice that he will ask for judgment against the lands and for an order to sell the same to satisfy such judgment.

Section 17 of said chapter 22 provides that upon completion of the publication and notice the district attorney for the county shall file a complaint in the District Court setting forth the fact of the preparation and publication of the said delinquent tax list and notice, and shall ask judgment and decree of court against the property, and that the District Court shall acquire full and complete jurisdiction over the lands described in said delinquent tax list.

Section 18 of said chapter 22 provides for the examination by the court of said delinquent tax list and the entering of judgment for amount stated therein where the owners have interposed no defense to said action. And further the court directs the clerk to issue an order directing the tax collector of said county to sell at public auction the property included in said delinquent tax list, the statute providing the terms under which the order shall be made.

Section 21 provides for an appeal to the Supreme Court of the territory.

Section 22 provides for the sale at the courthouse of each county of each parcel of property in the list attached to the order of sale.

Section 23 provides for the issuance to the purchaser at such sales of a certificate of sale showing properties sold, the name of person or

persons against whom the tax was assessed, or that the assessment was against unknown owners, amount paid therefor, etc., and further providing that final judgment for the sale of such real estate for delinquent taxes shall estop parties from raising any objection thereto or to a tax title based thereon which existed before the rendition of such judgment and could have been presented as a defense in such action in court which section will be referred to later. There are other sections of this general act which probably need not be referred to.

Reference should perhaps be made to chapter 49 of the Session Laws of 1899, providing for the assessment and collection of taxes on land grants. We have referred to these various sections briefly without attempting to set them out because the tax title on which appellee's claim to ownership of these lands rests was derived through the procedure under these various sections. The land in question was a private land claim designated as the "Elena Gallegos land grant." The grant was a very old one, and there were numerous heirs and assigns of the original grantee. The assessor, under the laws of the state of New Mexico hereinbefore referred to, was authorized to assess the property to unknown owners when he found it impracticable to obtain the names of the owners. This the assessor seems to have done in the case at bar, and his action, in the absence of a showing to the contrary, should, we think, be presumed to be correct. In Daughtry v. Murry, 18 N. M. 35, 41, 133 Pac. 101, 103, in a case of assessment to owners unknown, the court said:

"We are therefore of the opinion that it is impracticable for the assessor to obtain the name of the real owner of a tract of land from the official county record, as available for his inspection, and, in the absence of fraud, an assessment against unknown owners is not invalid, because of the fact that the assessor might have ascertained the name of the real owner from the records of conveyances in the office of the county recorder in those cases where the owner has failed to list his property for taxation. It must be presumed, in the absence of a showing to the contrary, that the assessor did his duty, and that inasmuch as he made the assessment to unknown owners, it was impracticable to obtain the real owner's name."

It would seem that the assessor was fully authorized under statutes quoted to assess this property to unknown owners. There is no reason why the owners of this tract of land should not have listed the property for taxation and given some attention themselves to the payment of taxes.

The certificate of sale would only be basis for a legal title to the purchaser of that portion of the tract or subdivision of the tract upon which the taxes had not been paid, and section 25 of chapter 22, Laws of 1899 provides in part as follows:

"In case any tract or legal subdivision of real estate, be sold as hereinbefore provided, upon a part of which the taxes had been paid, such sale and certificate shall nevertheless vest a complete and perfect title in the purchaser and his assigns to such portion of said tract or subdivision upon which the taxes had not been paid."

This protects those owning tracts in severalty who had paid their taxes.

[4] That the description likewise was sufficient, we think, is clear, for the description furnished the means of identification of the property, and that is the test. Ontario Land Co. v. Yordy, 212 U. S. 152, 157, 29 Sup. Ct. 278, 279 (53 L. Ed. 449). The Supreme Court there quoted with approval the general rule in regard to descriptions in conveyances as stated by Jones on Real Property, § 323, as follows:

"The first requisite of an adequate description is that the land shall be identified with reasonable certainty, but the degree of certainty required is always qualified by the application of the rule that that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the means of identification. The description will be liberally construed to afford the basis of a valid grant. It is only when it remains a matter of conjecture what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels."

It is interesting to note also in that case that the Supreme Court refers to a statute of the state of Washington somewhat similar to the New Mexico statute, and quotes with approval from Shipley v. Gaffner, 48 Wash. 169, 171, 93 Pac. 211, 212:

"We have repeatedly held that these tax foreclosure proceedings are in rem, and not against the person of the owner, and that owners are bound to take notice of the property they own and pay the taxes thereon and defend against foreclosure for delinquent taxes, even though the property is assessed to unknown persons or to other persons."

See, also, Carson v. Titlow, 38 Wash. 196, 198, 80 Pac. 299.

It seems to us that the statutes of New Mexico were substantially complied with in the assessment of this grant to unknown owners, that the description as hereinbefore set forth of the grant was sufficient, and that the appellant has no just ground for complaint as to the manner of the assessment.

[5] II. It must be accepted as true by this court, for the purposes of this appeal, that illegal levies were included in the taxes for which the tax sale was made; in other words, a portion of the levies were legal and a portion were illegal. The nature of the illegal taxes is pointed out in paragraph 7 of the answer, and complaint is there made, for instance, that the levies for school districts. Nos. 4, 35, and 22 are illegal and void, there being, it is alleged, no part of said lands in said district; again that the levy of one mill on the total valuation of said land grant as special levy for flood fund is illegal; again, that the levy by the county of Bernalillo of three mills for school purposes in addition to the special levy of the several districts and the territorial levies was illegal; further, that the assessor unlawfully added a penalty to the valuation and failed to enter on the tax roll the words, "Sold to the county;" and various other similar objections. These will indicate the general line of complaints as to illegal taxes included in the levy. The most serious is the one with reference to the levy for school districts 4, 35, and 22.

Appellee urges with much force that a tax illegal in part is illegal in toto, and that it must necessarily follow that without a legal tax

there can be no legal sale, and many authorities from many states are cited on this proposition, special reliance being placed on the words of Mr. Cooley in his Constitutional Limitations, 521, as follows:

"Wherever a tax is invalid because of excess of authority, or because the requisites in tax proceedings which the law has provided for the protection of the taxpayer are not complied with, any sale of property based upon it will be void also. The owner is not deprived of his property by the law of the land if it is taken to satisfy an illegal tax, and if property is sold for the satisfaction of several taxes, any one of which is unauthorized, or for any reason illegal, the sale is altogether void."

Other cases to the same effect are Gage v. Pumpelly and Others, 115 U. S. 454, 6 Sup. Ct. 136, 29 L. Ed. 449, and Santa Clara County v. Southern Pacific R. Co., 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed. 118. It may be noted that the Supreme Court of New Mexico in Maxwell v. Page et ux., 23 N. M. 356, 168 Pac. 492, 5 A. L. R. 155, under a somewhat different state of facts, it is true, refers to the opinion of Judge Cooley as to the strict construction of taxing statutes as to time, place, and manner of sales, but does not accept the rule as laid down by him, and holds that the provisions in regard to the time, place, and manner of sale are directions to the taxing officers, and that the sale is valid notwithstanding any irregularity therein. The courts of New Mexico evidently do not follow the strict rule laid down by Judge Cooley. In Gage v. Pumpelly, 115 U. S. 454, 6 Sup. Ct. 136, 29 L. Ed. 449, before referred to, the Supreme Court follows the construction of a state statute by the Illinois court, the same establishing a rule of property, the Supreme Court properly following that rule.

The authorities cited on the proposition that a levy which is illegal in part is illegal in toto are entitled to great respect, but none of these are decided under a statute similar to that of New Mexico known as the curative statute.

III. We refer in this connection now to what is known as the curative statute of New Mexico, which is in part as follows (section 25, c. 22, of the Statutes of 1899):

"* * * And no bill of review or other action attacking the title to any property sold at tax sale in accordance with this act shall be entertained by any court, nor shall such sale or title be invalidated by any proceedings except upon the ground that the taxes, penalties, interest and costs, had been paid before the sale, or that the property was not subject to taxation."

[6] This provision of section 25, c. 22, of the Statutes of 1899 of New Mexico attempts to cure any defects in tax procedure and permits an attack to be made on tax titles only by showing the payment of taxes, or that the land was not subject to taxation. Of course, curative statutes cannot validate an assessment void for want of jurisdiction, and the power by a curative statute to cure defects in assessments must be limited to irregularities. Such, we think, are the holdings of the New Mexico cases. This statute has been sustained by the Supreme Court of the territory of New Mexico in Straus v. Foxworth, 16 N. M. 442, 117 Pac. 831. That case was subsequently affirmed by the Supreme Court of the United States in 231 U. S. 162, 34 Sup. Ct. 42, 58 L. Ed. 168. In the opinion of the state court (16 N. M. 450, 117 Pac. 832) it is said:

"This brings us to the inquiry whether the Legislature, having the will, had also the power, to so limit the right of attack on a tax title. It is not claimed for the appellee that such a statutory limitation would stand against fraud or lack of jurisdiction, but they do assert that the irregularities set up in the complaint do not go to the jurisdiction, and there is no claim of fraud made. The irregularities alleged are plainly distinguishable from such as would defeat jurisdiction, as, for instance, that there was no tax laid, or attempted to be laid, on the land in question. Assuming, then, that there is no jurisdictional defect in the case, we have to determine the question of absolute right involved."

In Maxwell v. Page, 23 N. M. 356, 365, 168 Pac. 492, 495 (5 A. L. R. 155) the court said:

"This curative feature of the statute stands out conclusively against any technical objection to a tax title. This provision, if it is to be given the force and effect which its language requires, prohibits the interposition of any objection to a tax title, except such as are named in the provision itself. All other directions and provisions in regard to the procedure to be employed by the taxing officers must yield to this provision, or it must be held to be of practically no force and effect. In view of the whole act we conclude that the Legislature intended that the curative feature of the statute should prevail over any irregularity which might occur in the tax proceedings. It is true that the Legislature directed that tax sales should take place at a certain time after a certain notice. It is likewise true that the curative provision in the statute must be held to have the force and effect of rendering the directions in regard to the procedure merely directory, and not mandatory, and to amount, in effect, to saying to taxing officers that they shall proceed as provided in the act, but as saying to the taxpayer that, if they fail to so proceed, that fact shall not be a defense to him, and shall not invalidate the tax title."

One of the leading cases with reference to this statute is Pace v. Wight, 25 N. M. 276, 280, 181 Pac. 430, 431. The court there says:

"The effect of this curative provision has been before this court in several cases. It was first considered in the case of Straus v. Foxworth, 16 N. M. 442, 117 Pac. 831. It was there held that the sale vests a title in the purchaser which can be invalidated only on the ground that the taxes, penalties, interest, and costs have been paid before the sale, or that the property was not subject to taxation, and that it could not be invalidated for irregularities in the proceedings leading up to the sale unless they were fraudulent or amounted to jurisdictional defects. The rule in this case was followed in the later cases of Maxwell v. Page, 23 N. M. 356, 168 Pac. 492; Hiltscher v. Jones, 23 N. M. 674, 170 Pac. 884; Knight v. Fairless, 23 N. M. 479, 169 Pac. 312. In all of these cases it is conceded that jurisdictional defects are not cured by the curative provisions of the statute. In other words, it is essential that the property should have been listed for taxation, and that the tax should have been laid.

"The fact that the property was in fact sold for delinquent taxes is likewise jurisdictional; for, if no sale in fact occurred, the basis for subsequent proceedings would not exist."

We think these cases thoroughly settle the doctrine of the New Mexico courts that jurisdictional defects are in no wise cured by the provisions of the statute, and that is, of course, the general line of authority with reference to curative statutes. Williams v. Supervisors of Albany, 122 U. S. 154, 164, 7 Sup. Ct. 1244, 30 L. Ed. 1088. So the case is narrowed down to the proposition of whether the alleged illegal levies of taxes in connection with the legal levies are jurisdictional defects or mere irregularities. If jurisdictional defects, the statute

would not apply. If mere irregularities, the statute would cure. In Pace v. Wight, hereinbefore referred to, the court seems to indicate the jurisdiction essentials, namely, that the property should have been listed for taxation, that the taxes should have been levied, and that the property should in fact be sold for delinquent taxes. Black on Tax Titles, § 452, sets forth the requirement as follows:

"First, that a tax has been levied; second, that the property sold is subject to taxation; third, that the property has been assessed; fourth, that the taxes had not been paid; fifth, a statutory warrant for the sale; sixth, a sale made under such warrant."

Here the property was listed for taxation, the taxes were levied, but were not paid, and a sale was made after judgment of a court of competent jurisdiction ordering said sale. The property was subject to taxation, and certain legal taxes were levied. It could have been sold for such taxes. Certain erroneous taxes were levied against the lands in connection with proper legal taxes. It was the evident intention of the lawmaking power of New Mexico that all irregularities should be cured by the statute. If there is an erroneous exercise of power under jurisdiction, it is quite different from an attempted exercise of power where there is no jurisdiction. It seems to us that in this matter there was jurisdiction to make the assessment or levy and the sale, and the fact that erroneous taxes were included with proper ones in the levy is not sufficient to take out of the curative statute this particular case; in other words, these defects were not jurisdictional.

In Chisholm et al. v. Bujac (N. M.) 202 Pac. 126, 127, it is said:

"Appellants attack the tax sale upon various grounds, particularly because of the failure of the treasurer to keep a book of sales and his failure to make the entry, 'Sold to the county,' on the tax rolls opposite the unpaid tax. Appellants also contend that the order levying the tax was not entered on the records of the county commissioners, and that the seal required by statute was missing from the warrant for the collection of the taxes issued to the treasurer. All these matters are irregularities not affecting the jurisdiction to make the sale."

An interesting case on the general subject is Beggs v. Paine, 15 N. D. 436, 454, 109 N. W. 322, 330. The court says:

"Besides all these precautions, the proceedings are so familiar to all, and are given so much publicity, both officially and unofficially, and knowledge of their nature and of the time and place they occur, and of where the public record of them is kept, is so general and widespread, that ignorance of them or of their effect is excusable only in very rare cases. Under such circumstances can the taxpayer be heard to say that he owes no obedience to so fair and liberal a law? What constitutional right does such a law invade or deny? In what respect is it arbitrary or unjust? This road tax was only a small fractional part of the aggregate taxes for which the sale was made. The other tax levies were valid. There was therefore jurisdiction to sell the land for taxes, and, if the road tax was void, it was merely an error in the exercise of jurisdiction, resulting in a sale for more than was legally due; but this error in the exercise of jurisdiction is a wholly different thing from an entire absence of jurisdiction. In the absence of legislation, such as is found in section 1263, the error would be fatal to the sale, as this court has repeatedly held. Sweigle v. Gates, 9 N. D. 538, 84 N. W. 481; Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227, and other cases. If jurisdiction exists, but is erroneously exercised, the error may be remedied by a curative or

limitation statute, subject to those restrictions hereinbefore referred to.. See on this point the opinion in Nind v. Myers, filed herewith, 109 N. W. 335."

The state of Washington has a similar statute, and the holdings have been practically the same. See Carson v. Titlow, 38 Wash. 196, 80 N. W. 299. In Youngstown Bridge Co. v. Kentucky & I. Bridge Co. et al. (C. C.) 64 Fed. 441, 442, the court said:

"Upon its face, the assessment in question appears to be within the jurisdiction of the board. It professes to be an assessment made upon the property of the bridge company in Floyd county, in the state of Indiana. It is conceded that a portion of the property assessed is located in the state of Indiana, but it is insisted that the board did not confine its assessment to the property in this state, but included therewith property of the bridge company located in Kentucky. The precise question for decision, then, comes down to this: The board, professing to assess property in this state, by mistake erroneously assessed some portion of the bridge property actually located in Kentucky as though located within the state of Indiana. Jurisdiction is the power to hear and decide. The board is vested with the power to hear and decide, not only on the value of taxable property, but it must necessarily have the power to hear and decide what property is properly assessable. Its decision is no more void when it decides erroneously than when it decides correctly. It is of the essence of the power to hear and decide that the determination may be erroneous as well as correct. To hold that jurisdiction is lost because of an erroneous decision would be to overturn principles as ancient and venerable as the law itself. Before the board can lawfully fix an assessment, it must determine that the property about to be assessed is the proper subject of assessment, and also the value which ought to be placed upon it for purposes of taxation. The determination of the one is not more within its rightful jurisdiction than the determination of the other. Every fact necessary to support the decision of the board is as conclusively settled against collateral attack as though expressly found by it."

[7] IV. Another important question is raised in this case in the way of affirmative defense, namely: That the judgment for delinquent taxes in the court of Bernalillo county, N. M., estops appellant from setting up any of the alleged defects or illegal levies set out in paragraph 7 of his answer. Section 5 of chapter 22, Laws of 1899, New Mexico, provides as follows:

"And under no circumstances shall the assessed value or levy or amount to be paid as taxes, as fixed by the board of county commissioners, sitting as a board of equalization, or as finally determined and certified by said territorial board of equalization and by the auditor, be altered, reduced, abated, rebated, or in any other manner or by any means or device, be changed by any board, officer or person, except by direction of a competent court in a proper proceeding," etc.

Under section 15 of said chapter 22, the delinquent list is published and notice published or posted that application will be made to the District Court at a certain time for judgment. These sections we have heretofore referred to. In this method a delinquent taxpayer is brought into court. He has not paid his taxes, but nevertheless he has an opportunity, under section 17 of chapter 22 of the Statutes of 1899, to make his defense in court, and the court has full and complete jurisdiction to carry out the purposes of the law. The citizen owes some duty under the law to properly list for taxation his lands. That does not appear to have been done by the defendants in this case. No attempt seems to have been made on their part to correct any of their

284 F.—44

tax levies before the board of equalization, and they had their day in court under section 18 of said chapter 22. The court granted judgment. True, the judgment was in rem, but it was a binding judgment, the court having jurisdiction of the subject-matter. Section 23 of chapter 22 contains this provision with reference to such judgment:

"Any final judgment for the sale of such real estate for delinquent taxes rendered in accordance with the provisions of this act shall estop all parties from raising any objection thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment or decree and could have been presented as a defense in such action in a court wherein the same was rendered, and as to all such questions the judgment shall be conclusive. evidence of its regularity and validity in all collateral proceedings, except in cases where the taxes had been paid, or the real estate was not liable to the tax or assessment. Counties purchasing at tax sales shall be deemed purchasers within the meaning of this act."

From the judgment of the District Court section 21 of chapter 22 provides for an appeal to the Supreme Court of the state. Under section 23 of chapter 22, hereinbefore set out, parties are estopped after the judgment from raising objections which existed before the rendition of such judgment, and could have been presented in a defense to such action in the court. In this case such judgment was rendered, and we do not think it is open to collateral attack. See 2 Cooley on Taxation, 897; Stanley v. Supervisors of Albany, 121 U. S. 535, 550, 7 Sup. Ct. 1234, 30 L. Ed. 1000. Parties had the opportunity for a hearing in a court of competent jurisdiction before any judgment was entered or order for the sale of the property. Weyerhaueser v. Minnesota, 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583. Very much in point and very applicable to this situation is the case of Chicago Theological Seminary v. Gage (C. C.) 12 Fed. 398, 400. The court there says:

"After the judgment has been rendered, and the property sold in pursuance thereof, the owner ought not, it seems to me, to be allowed to go behind the judgment and dissect the tax, and if he can find an illegal item of expenditure, for which the municipality has made an appropriation, which has been included in the levy, to have the whole assessment and the proceedings of judgment and sale declared void."

In Carson v. Titlow, 38 Wash, 196, 198, 80 Pac. 299, 300, the validity of a tax sale under a somewhat similar statute to the New Mexico statute was affirmed, the court saying:

"If appellants had shown any diligence at all in reference to their taxes on these lands, they would have known of the proceedings, and could have litigated the alleged excessive assessment with the county in the foreclosure action. It is not claimed that any part of the tax has been paid, or that the lands were not subject to taxation. We think, under the allegations of the complaint and the rules stated above, that appellants were clearly estopped to litigate the question of excessive assessment in this action."

In Boyd v. Ellis, 107 Mo. 394, 400, 18 S. W. 29, 30, the court says:

"A sale under a tax judgment is in no way affected by the fact that the assessment books were not verified, nor does it matter how irregular the assessments may have been. These judgments of the circuit court rendered under the tax law of 1877 conclude and cut off all inquiry as to the irregularity of the assessments. Such things are matters of defense in the tax suit, and, if not made in the suit to recover the tax, they are no longer open to inquiry.

The judgment establishes the validity of the tax, just as any other judgment establishes the validity of the debt sued upon."

Defendants in the court below had the opportunity, first, to report their lands and pay their taxes. Not doing this, when the notice of delinquent taxes was published or posted, they had notice of the court proceedings. They could have appeared there and contested the matters they now set forth as defenses to the tax title. Were they not satisfied with the judgment of the court of Bernalillo county, they could have appealed to the Supreme Court. None of these things they did. They apparently stood by knowing, as citizens, that there were taxes to be paid for the support of their state or territory and municipalities, and permitted without question these proceedings to go on. They were bound, as owners of the property, to bear their fair and reasonable proportion of the public's burdens. The taxing authorities seem to have followed the statutes of New Mexico in the assessment of the property, but did err in levying taxes that should not have been levied in connection with those which were perfectly proper burdens upon these lands. If in making such assessments and levies the public officers erred, it is a most proper thing that some curative statute should remedy the matter.

We believe that the assessment made to the unknown owners of the tract known as the "Elena Gallegos land grant" was made as provided by the statutes of New Mexico, and was legal; that the inclusion in the levy of taxes of certain matters that should not have been included did not render void the tax sale and the certificate and deed thereunder, which is the basis of appellant's title; that such defects were irregularities, and not jurisdictional, and they were cured by the curative statute of New Mexico; further, that the judgment of the court of Bernalillo county was conclusive and cannot be attacked in a collateral proceeding.

We conclude that the decision of the trial court is correct, and therefore the judgment and decree is affirmed.